(June 15, 1915.)

# F. A. BLACKWELL, Appellant, v. R. F. KERCHEVAL, Respondent.

### [149 Pac. 1060.]

DEMURRER—ADMISSION IMPLIED BY—RATIFICATION OF UNAUTHORIZED ACT OF AGENT—EFFECT OF—CONSIDERATION FOR—RATIFICATION A QUESTION OF FACT.

1. In considering the questions raised on an appeal from an order of the trial court sustaining a demurrer to the complaint, the truth of every material allegation of the complaint which is well pleaded must be deemed to be admitted by the demurrer.

2. A principal may ratify an unauthorized act of his agent if, at the time of such ratification, he has knowledge of all of the material facts connected with the transaction, and the ratification may be either by words or by conduct indicating an intention on the part of the principal to adopt the act as his own; such intention is implied from an acceptance of the benefits of the unauthorized act.

3. Where a principal, with knowledge of the facts, ratifies the unauthorized act of an agent, principal and agent are invested with the same rights and obligations respectively as if the transaction had been previously authorized, and the agent is thereby relieved from personal responsibility by reason of such unauthorized act, whether he exceeded or departed from his instructions, or was a mere volunteer with regard to the conduct in question.

4. One who voluntarily accepts the benefits of an unauthorized act by another, ratifies the act, and takes it as his own with the burdens incident thereto. One may not appropriate the benefits of a transaction made in his behalf, and while retaining them, disavow the burdens or disadvantages arising out of it.

5. A principal's ratification of the act of his agent requires no new consideration.

6. Where a request is made to continue services of a character theretofore rendered, or with regard to the same subject matter, the continuance of such services is a sufficient consideration to support a promise to pay for those rendered prior to such request.

7. Where the admitted facts surrounding a given transaction are such that reasonable men could draw different conclusions as to whether or not there has been a ratification by the principal of the unauthorized act of an agent, or the extent of such ratifica-

tion, the question is one of fact to be determined by the jury under proper instruction from the court, and it is error to sustain a general demurrer to a complaint, where it appears from the allegations that questions of fact are involved.

8. *Held,* that the complaint in this case states a cause of action, and that the demurrer should have been overruled and the defendant required to answer.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. John M. Flynn, Judge.

Action to recover on an alleged contract of agency. Demurrer to complaint sustained and judgment rendered in favor of defendant. *Reversed.*

John P. Gray, for Appellant.

"The subsequent ratification of the act done by even a voluntary agent of another without authority from him is equivalent to a previous authority." (*Gleason v. Dyke,* 22 Pick. (39 Mass.) 390; *Viley v. Pettit,* 96 Ky. 576, 29 S. W. 438.)

In the case at bar, Mr. Kistler, knowing all the facts, not only consented to Mr. Blackwell's actions in connection with the transaction, but expressly affirmed them; accepted the benefits of them; did not reject or object to them, and agreed to indemnify him. (*Gelatt v. Ridge,* 117 Mo. 553, 38 Am. St. 683, 23 S. W. 882; Tiffany on Agency, 86; Mechem on Agency, secs. 350, 351, 500, 498, 1521, 1609; Wharton on Agency, sec. 87; *Drakely v. Gregg,* 8 Wall. (U. S.) 242, 19 L. ed. 409.)

A new consideration is not necessary to support the ratification of an agent's unauthorized contract. (*McLeod v. Morrison & Eshelman,* 66 Wash. 683, 120 Pac. 528, 38 L. R. A., N. S., 783; *Lynch v. Smyth,* 25 Colo. 103, 54 Pac. 634; *Fant v. Campbell,* 8 Okl. 586, 58 Pac. 741.)

A promise founded partly on a past consideration and partly on an executory one is enforceable. (9 Cyc. 362; *Fisk Min. & Mill Co. v. Reed,* 32 Colo. 506, 77 Pac. 240.)

A moral obligation, accompanied by a benefit received by the promisor, is sufficient in connection with the receipt of such benefit to support a contract. (*Goulding v. Davidson,* 26 N. Y. 604; *Doty v. Wilson,* 14 Johns. (N. Y.) 378; *Lycoming County v. Union County,* 15 Pa. 166, 53 Am. Dec. 575–581; *Doyle v. Reilly,* 18 Iowa, 108, 85 Am. Dec. 582; *Chadwick v. Knox,* 31 N. H. 226, 64 Am. Dec. 329.)

C. H. Potts and G. D. Lantz, for Respondent.

Since appellant did not assume to act as agent for Mr. Kistler in so far as the taking of the note and its indorsement were concerned, all question of ratification is eliminated from the case presented to the court. Where acts are not performed by one claiming at the time to act as agent, ratification cannot exist. (31 Cyc. 1251; *Ellison v. Jackson Water Co.,* 12 Cal. 542; *In re Roanoke Furnace Co.,* 166 Fed. 944; *Mattocks v. Young,* 66 Me. 459.)

Appellant is relying upon a contractual obligation, an obligation arising, if at all, independent of the relation of principal and agent. (*Thomson v. Thomson,* 76 App. Div. 178, 78 N. Y. Supp. 389; *Sharp v. Hoopes,* 74 N. J. L. 191, 64 Atl. 989.)

A mere statement of intention made without intention to contract is not such an offer as may be turned into an agreement by acceptance. (9 Cyc. 276.) Without an acceptance an offer gives rise to no obligation. (9 Cyc. 244, 247, 254.) *Gleason v. Dyke,* 22 Pick. (39 Mass.) 390, cited by appellant, has been overruled. The Massachusetts cases support respondent's contention. (*Massachusetts Mut. Life Ins. Co. v. Green,* 185 Mass. 306, 70 N. E. 202; *Moore v. Elmer,* 180 Mass. 15, 61 N. E. 259, 260.)

The New York cases are in line with the weight of authority on past consideration in general. (*People v. Barker,* 17 Misc. 497, 41 N. Y. Supp. 237; *Perkins v. Smith,* 83 App. Div. 630, 81 N. Y. Supp. 955; *Blanshan v. Russel,* 32 App. Div. 103, 52 N. Y. Supp. 963, 161 N. Y. 629, 55 N. E. 1093; *Myers v. Dean,* 11 Misc. 368, 32 N. Y. Supp. 237, 238; *Sheperd v. Young,* 8 Gray (74 Mass.), 152, 69 Am. Dec. 242; *Collins v. Martin,* 43

Kan. 182, 23 Pac. 95; 9 Cyc. 360, 361; *Gardner v. Schooley,* 25 N. J. Eq. 150; *Updike v. Titus,* 13 N. J. Eq. 151.)

If a promise is made because of a sense of honor, that of itself will not constitute a valuable consideration. (*Morris v. Norton,* 75 Fed. 912, 21 C. C. A. 553.)

Where benefits are conferred without a request, express or implied, a subsequent promise to pay therefor is not supported by a consideration. (*Cook v. Bradley,* 7 Conn. 57, 18 Am. Dec. 79; *Carson v. Clark,* 1 Scam. (2 Ill.) 113, 25 Am. Dec. 79; *Boston v. Dodge,* 1 Blackf. (Ind.) 19, 12 Am. Dec. 205; *Warren v. Whitney,* 24 Me. 561, 41 Am. Dec. 406; *Woodburn v. Renshaw,* 32 Mo. 197; *Savage v. Burns,* 3 Mont. 527, 531; *Wilson v. Edmonds,* 24 N. H. 517, 546; *Sharp v. Hoopes,* 74 N. J. L. 191, 64 Atl. 989; *Bailey v. Rutjes,* 86 N. C. 517; *Whitall v. Morse,* 5 Serg. & R. (Pa.) 358; *Shepard v. Rhodes,* 7 R. I. 470, 84 Am. Dec. 573; *McCord v. Dodson,* 10 Heisk. (57 Tenn.) 440; *Davis v. Anderson,* 99 Va. 620, 39 S. E. 588; 9 Cyc. 356–360, and numerous cases cited; 22 Cyc. 83.)

BUDGE, J.—This action was brought by F. A. Blackwell against R. F. Kercheval, public administrator, as administrator of the estate of Wilson Kistler, deceased, to recover judgment against said estate for the sum of $29,500.48 with interest.

To the second amended complaint a general demurrer was sustained by the trial court, and upon refusal of plaintiff to further amend his complaint, judgment of dismissal was entered, from which judgment this appeal is taken.

Omitting the formal parts, and the general allegations of the appointment of R. F. Kercheval, public administrator, as administrator of the estate of Wilson Kistler, deceased, the material allegations of the complaint are that, on or about June, 1909, Kistler besought the plaintiff, Blackwell, to sell certain common stock of the Spokane & Inland Empire Railway Company owned by him amounting to 510 shares, and authorized plaintiff to negotiate and consummate the sale thereof; that the plaintiff sold the stock to one Davidson for

$24,480, and accepted the note of Davidson for this amount in payment of the stock.

The transaction between Blackwell and Davidson was completed on November 1, 1909, and on the following day, to wit, November 2, 1909, Blackwell wrote a letter to Kistler at Lock Haven, Pennsylvania, in which he advised Kistler of the sale of the stock to Davidson and that Davidson had given him a note for the proceeds, and in concluding his letter stated: ''I have accepted this note and turned same over to the Blackwell Lumber Co. Mr. Davidson is worth the money and I think will meet the note. This is a chance the Blackwell Lumber Co. has taken, or rather that I took, as I have indorsed the note.''

Kistler, on November 8, 1909, addressed a letter to Blackwell, in which he stated: ''I hardly expected that you would take the trouble in closing up the matter and go as far as you did in reaching a conclusion where a body might have supposed there would have been enough interest with the representatives of the Inland Empire Railroad Co., to at least have made an effort to protect innocent stockholders. I would not expect that you should take any chances in the closing of this matter, and if in the future anything should turn up with this that would cause you any inconvenience, if you will please let me know, I will take the matter up and see that you are fully protected.''

It is then alleged in the complaint that the note in question was not in fact turned over to the Blackwell Lumber Company, but, under instructions from Kistler, the note itself was indorsed by the plaintiff and sold by him to the Old National Bank of Spokane, Washington, and the proceeds thereof paid over to the Blackwell Lumber Company to apply upon the capital stock subscribed by Kistler; that Davidson paid the interest on his note to June 29, 1910, but has never paid the principal or any other interest, and the plaintiff has been unable to secure the payment thereof, and that because of his indorsing the note, the plaintiff was required to renew the same; that later Davidson executed two notes in place of the original note, one for $12,000 and one for $12,480, and that

the plaintiff was required to pay the note of $12,480 and the $12,000 is still unpaid; and that plaintiff will be required to pay the same because the said Davidson is unable to pay it; that the plaintiff has paid to the bank in interest the sum of $4,920.48.

It is further alleged that the matter was carried along, by an agreement and understanding between the plaintiff and Kistler, in the plaintiff's name, in the hope plaintiff would be able to procure from Davidson, or through Davidson from one J. P. Graves, the principal and interest on the note; that subsequent to receiving the letter bearing date November 8, 1909, signed by Kistler and addressed to plaintiff, on at least two occasions Kistler renewed the agreement set forth in this letter, stating that if after such efforts the plaintiff could not recover, then Kistler would take the matter up and make a settlement with this plaintiff, so that he would not be losing anything by the transaction.

Plaintiff alleges that he made every effort in his power, prior to bringing this action, to obtain the money due on the note from Davidson and Graves, and continued to carry this transaction along and pay the interest upon the notes according to the agreement between the plaintiff and Kistler.

Plaintiff further alleges the presentation of his claim to the administrator of the estate of Kistler, deceased, and the rejection thereof.

Counsel for appellant makes three specifications of error:

First, "The court erred in sustaining the demurrer of the defendant to the second amended complaint of the plaintiff."

Second, "The court erred in holding that the second amended complaint did not state facts sufficient to constitute a cause of action."

Third, "The court erred in entering judgment in favor of defendant and against the plaintiff."

The plaintiff's claim to reimbursement is based upon three propositions:

(a) That even if the plaintiff did exceed his authority in accepting a note for the stock of Mr. Kistler, he fully reported the transaction to the principal and the principal, with full

knowledge, ratified the act of his agent and expressly agreed to indemnify him.

(b) The principal, with full notice and knowledge that the agent had accepted the note from Davidson, had indorsed and sold the note, and with full knowledge of all of the other facts, accepted the benefit of the negotiation and sale of the Davidson note, received and held the stock of the Blackwell Lumber Company, and further wrote Mr. Blackwell in effect that he would indemnify him.

(c) On at least two occasions subsequent to 1909, Mr. Kistler requested Mr. Blackwell to continue to handle the transaction, and again reiterated his promise to hold Mr. Blackwell harmless against loss. In other words, approved, not only what he had already done, but asked him to perform some other services in the matter.

For the purpose of disposing of this demurrer, every material allegation of the plaintiff's complaint which is well pleaded must be taken as true.

From the allegations in the complaint, it appears that Kistler requested Blackwell to sell the common stock of the Spokane & Inland Empire Railway Company owned by him. In pursuance of Kistler's wishes Blackwell sold the stock in question to Davidson, and, in consummating said sale, acted as the agent of Kistler. As held in the case of *Pouppirt v. Greenwood,* 48 Colo. 405, 110 Pac. 195: "An 'agent' is one who acts for or in place of another by authority from him, or who is intrusted with the business of another." And in the case of *Echols v. State,* 158 Ala. 48, 48 So. 347: "An agent is one who undertakes to transact some business, or to manage some affair for another by the other's authority and to account to him for it."

Under the allegations of the complaint, it must be conceded that, in accepting Davidson's note in lieu of cash, Blackwell exceeded his authority as the agent of Kistler. This brings us to the question; Did Kistler ratify the sale made by his agent Blackwell to Davidson? A principal may ratify an unauthorized act of his agent if, at the time of the ratification, he has knowledge of all of the facts surrounding, and con-

nected with, the transaction. In the case of *Drakely v. Gregg*, 8 Wall. (U. S.) 242, 19 L. ed. 409, the court said: "If, with a full knowledge of the facts concerning it, a person ratify an agreement which another person has improperly made, concerning the property of the person ratifying, he thereby makes himself a party to it, as much so as if the original agreement had been made with him. No new consideration is required to support the ratification." In the case of *Osborne v. Durham*, 157 N. C. 262, 72 S. E. 849, the court applied the doctrine that "Agents to sell stock received notes and orders in payment therefor instead of cash, without express authority from their principal, and after the nonpayment of a draft on the corporation, which they had instructed their principal to draw, one of them gave his individual note for the amount, which was accepted, and proved the principal's claim under the draft against the insolvent estate of .the corporation, with the knowledge and expressed satisfaction of the principal, who also requested the maker of the note for advances to be credited thereon. *Held*, that there was a complete ratification of the sale.

"A principal's ratification of the act of his agent requires no new consideration.

"An act of an agent may be ratified by the words or conduct of his principal indicating an intention on the part of the principal to adopt the act as his own.

."Where a ratification of the acts of an agent is made with knowledge of the facts, it invests principal and agent with the same rights and duties as if the transaction had been previously authorized, and the agent is thereby absolved from all responsibility on account of the unauthorized act or conduct, whether he exceeded or departed from his instructions, or was a mere volunteer."

The principles promulgated in Mechem on Agency, 2d ed., vol. 1, are: (1) "Sec. 350. Ratification is an approval of a previous act or contract, which thereby becomes the act or contract of the person ratifying." (2) "Sec. 352. Ratification is ordinarily a matter which is wholly optional with the principal. An act has been done which, . . . . was unauthor-

ized. The principal may ratify it or he may repudiate it. . . . . No matter how advantageous ratification might be to himself or to the other party or to the agent, the principal is under no legal duty to ratify the act." (3) "Sec. 354. It is, therefore, the general rule that one may ratify the previous unauthorized doing by another in his behalf, of any act which he might then and could still lawfully do himself, and which he might then and could still lawfully delegate to such other to be done."

It is well settled that, if the principal ratify a contract made by an agent, the substituted terms become a part of the original agreement or authorization. Based upon the allegations of the complaint in this case, we are satisfied that the entire transaction consummated by Blackwell, with reference to the sale of Kistler's stock in the Inland Empire Railway Company to Davidson who, instead of paying cash, gave his note, was fully understood and authorized by Kistler, and that Blackwell simply acted as the agent of Kistler in this matter. The complaint, in our opinion, sufficiently alleges the act of ratification. In *Mahon v. Rankin*, 54 Or. 328, 102 Pac. 608, 103 Pac. 53, it was held: "An allegation that the principal, with full knowledge of the facts, ratified the agent's unauthorized act is sufficient, without setting out how it was ratified."

It is alleged in the complaint that Kistler had subscribed for $25,000 capital stock of the Blackwell Lumber Company; that the $24,480 was applied upon the purchase price of this capital stock, and the balance was remitted by Kistler. It can be reasonably inferred from the complaint that the payment of the $24,480 guaranteed by plaintiff was at the request of Kistler by reason of his ratification of the entire transaction subsequent to the sale of the stock, and the application of the proceeds to the payment of his subscription to capital stock in the Blackwell Lumber Company. Kistler alone received the benefits of the transaction. There was no consideration moving from him to Blackwell.

In the meantime Davidson had been unable to meet the note which was indorsed by Blackwell and sold to the Old National Bank of Spokane, Washington. It is alleged that Kistler

knew the note had not been paid by Davidson, and being in possession of such information, he agreed with Blackwell that if he, Blackwell, would carry the transaction along and the money could not be finally realized on the Davidson note, he would save Blackwell harmless from any loss by reason of Davidson's failure to pay the note. This agreement was made subsequent to the letter of November 2, 1909, written by Blackwell to Kistler, and the letter of November 8, 1909, written by Kistler to Blackwell.

We believe the complaint sufficiently alleges the continuation of the transaction and an acknowledgment on the part of Kistler that he ratified all of the acts of his agent Blackwell and considered the entire transaction as his own; even the indorsement of the Davidson note by Blackwell which enabled him to pay for the capital stock that he had subscribed for in the Blackwell Lumber Company. In the case of *Waterson v. Rogers,* 21 Kan. 529, it is held that "One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its· burdens, as well as its benefits." Kistler, as has been heretofore stated, accepted the benefits of the sale of his stock in the Spokane & Inland Empire Railway Company by receiving the stock in the Blackwell Lumber Company. And upon the theory that one may not take the benefits of a contract made in his behalf and reject the burdens, under the facts alleged in the complaint in this case, it was incumbent upon Kistler to either accept the contract in its entirety or reject it as a whole. He was under no obligation to ratify the sale of the stock to Davidson, had he not so elected, for the reason that Blackwell had no authority to accept this note in lieu of cash. Also he was under no obligation to permit Blackwell to invest the money obtained from the sale of Davidson's note in the capital stock of the Blackwell Lumber Company.

From the allegations of the complaint which, in adhering to the principle above mentioned, we must assume to be true, it appears that, after the money had been invested in the Blackwell Lumber Company's business, and up until the death

of Kistler, the transaction had not been completed; and Blackwell, by Kistler's request, was to continue to permit the obligation to stand in the Old National Bank, as it was at the time he accepted the note in lieu of cash, and was to continue in his efforts to collect the amount due under the obligation from either Davidson or Graves, and Kistler was to hold Blackwell harmless by reason of the acceptance of Davidson's note.

Where competent evidence adduced is such that reasonable men could draw different conclusions as to whether or not there has been a ratification of unauthorized acts, or the extent of such ratification, the question is one of fact to be determined by the jury under proper instructions from the court, and it is error to sustain a general demurrer to a complaint where it appears from all of the allegations of the complaint that questions of fact are involved. (31 Cyc. 1677.)

In the case of *Fisk Min. & Mill. Co. v. Reed,* 32 Colo. 506, 77 Pac. 240, that court said: "Where there is a request to continue services of a character theretofore rendered, the continuance of such services is a sufficient consideration to support a promise to pay for those rendered prior to such request. (6 Ency. of Law, 2d ed., 694.)" And in the case of *Wolford v. Powers,* 85 Ind. 294, 44 Am. Rep. 16, the court said: "It is quite certain that the request to perform the services, coupled with the promise to pay for them, takes the case out of the rule that no action will lie for services rendered voluntarily or performed gratuitously, and that the same facts take the case out of the rule declaring an executed consideration to be insufficient to support a promise. Whatever may be thought of the reasoning of some of the earlier English cases, it cannot be denied that the conclusion that where there is a request, and continuous services of value are rendered to the person making the request, the consideration is a valid one, and will support a promise to pay for such services, although some of them were rendered prior to the request."

In the case of *Loomis v. Newhall,* 15 Pick. (32 Mass.) 159, the rule is announced that "An entire promise founded partly on a past and executed consideration and partly on an execu-

tory consideration, is supported by the executory consideration."

In 6 Am. & Eng. Ency. of Law, 2d ed., 694, it is stated that "A consideration which is executed in part only is called a continuing consideration and is valid, the executory portion of it being sufficient to support the entire promise."

We do not deem it necessary in this opinion to discuss or distinguish the principles announced in the authorities cited by learned counsel for respondent from the case at bar. We are not considering this case upon the evidence, but are only concerned with the sufficiency of the allegations of the complaint which, taken as a whole, we must assume to be true for the purpose of determining whether or not a cause of action has been stated. And, from our investigation, based upon this assumption, we are of the opinion that the complaint states a cause of action and the demurrer should have been overruled.

This cause is remanded to the trial court with directions to overrule the demurrer and require the defendant to answer. Costs are awarded to appellant.

Sullivan, C. J., and Morgan, J., concur.

Petition for rehearing denied.