250 P.2d 904

TARR v. AMALGAMATED ASS'N OF STREET ELECTRIC RY. & MOTOR COACH EMPLOYEES OF AMERICA, DIVISION 1055 et al.

No. 7852.

Supreme Court of Idaho.

Oct. 31, 1952.

Rehearing Denied Dec. 19, 1952.

224

Bistline & Bistline, Pocatello, for respondent.

K. C. Tanner and Richard R. Carney, Portland, Or., George R. Phillips, Pocatello, for appellants.

KEETON, Justice.

Respondent, J. E. Tarr, Jr., plaintiff in the trial court, will be hereinafter referred to as plaintiff. Appellants will be hereinafter referred to as defendants.

After a trial on issues joined, by a decree dated November 19, 1951, the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America, Division 1055, a labor organization, Ray Schell, Louella A. Schell, T. S. Beguin and Glenn Yaegle were restrained and enjoined:

"From interfering with the business of the plaintiff in the operation of buses within the city of Pocatello, Idaho, and territory contiguous thereto by picketing the same, or by threatening prospective passengers who are members of other Unions with fines if they ride said buses, by interfering with drivers of plaintiff's buses and by permitting the name of the plaintiff * * * to remain upon the 'Unfair List' of the Central Labor Council of Pocatello, which will affect plaintiff's business and from doing or committing any or all other acts which are unlawful in connection therewith in the absence of a labor dispute as defined by the laws of the State of Idaho, which will interfere with or damage plaintiff's said bus business."

Other parts of the decree appealed from will be hereinafter referred to where pertinent to a decision.

Succinctly, the facts are: plaintiff, on May 7, 1951, secured from the city commissioners of Pocatello, a franchise or permit to operate buses upon the streets of Pocatello for the purpose of carrying passengers for hire for a period of six months, beginning May 10th.

Pursuant to this arrangement with Pocatello, plaintiff began business on May 10, 1951, and employed the following persons to drive the buses: Grace Bloom, Georgia Gutzman, W. W. Stevens, Richard Stevens and Charlie Radford. These employees

were members of the defendant union. There was and is no union contract between the defendant union and the plaintiff herein.

On May 10th plaintiff was visited by defendant Yaegle, a union representative, who asked for a meeting. A meeting was held that evening and the bus drivers, plaintiff and Yaegle were present. There were two propositions discussed, to-wit: the drivers to be employed for charter trips; and a demand or request of the union representative Yaegle that Ray Schell and Louella A. Schell be employed as bus drivers. Further that the Schells be paid back pay for sums Yaegle claimed were owed them by a company (Motor Transit Company, a corporation), which had formerly operated buses on the streets of Pocatello. Plaintiff refused to employ the Schells or to pay them any sums they claimed were owed by the Motor Transit Company. A vote was taken and the employees voted to strike. None of the bus drivers appeared for work the next morning, May 11th. Plaintiff hired other bus drivers and continued to do business. Certain pickets, including the Schells, but not including any of plaintiff's bus drivers, picketed the loading stations of the plaintiff, carrying signs and placards reading "Pocatello Transit Company Unfair to Organized Labor". None of the pickets was an employee of the plaintiff. Pickets followed a practice of taking the names of union members of other unions and telling them that they, or members of their families, would be fined by the union if they rode plaintiff's buses. Pickets further talked to the drivers of the buses in an endeavor to get them to quit work and caused the name of the plaintiff to be placed on the unfair list of the Central Labor Council of Pocatello. The drivers of the buses were called "scabs" and members of other unions were threatened if they did not desist from patronizing the plaintiff's buses. Other acts of coercion to prevent plaintiff from operating buses were indulged in by Yaegle and other pickets.

Prior to May 10th (the date plaintiff began operating buses on the streets of Pocatello) the Motor Transit Company, a corporation, had been engaged in the business of operating buses in Pocatello and vicinity, pursuant to a franchise that had been in effect subsequent to 1936. By agreement with the City of Pocatello, this franchise was terminated on May 9, 1951.

Among the employees of the Motor Transit Company when it was operating buses were two of the defendants in this action, namely, Ray Schell and Louella A. Schell. The Motor Transit Company discharged Ray Schell on February 26, 1951, and Louella A. Schell on March 31, 1951, for what the Motor Transit Company considered sufficient cause.

While the Motor Transit Company was engaged in the transportation business, there was in effect a collective bargaining contract between the corporation and the

defendant union, and on March 9, 1951, the defendant union sent a notice of termination of the union agreement, and it was stipulated by the parties that the contract between the Motor Transit Company (not a party here) and the defendant union was by this notice terminated at midnight on May 10, 1951.

The Motor Transit Company surrendered its franchise and discontinued business on May 9, 1951.

Some of the drivers of the plaintiff's buses, formerly employees of the Motor Transit Company, namely, Grace Bloom, Georgia Gutzman, W. W. Stevens, Richard Stevens and Charlie Radford were employed by plaintiff starting on the morning of May 10, 1951.

Whether or not the Schells had been discharged by the transit company for sufficient cause under the contract between the union and the Motor Transit Company was never determined by the method provided in the bargaining contract between the union and the company, and the right, if any, of the Schells for seniority or other benefits by methods and procedure provided by the union contract with the Motor Transit Company was never determined

■ In assignments of error defendants challenge the sufficiency of the evidence to support certain findings. We will not comment on the challenged findings separately. Suffice to say findings made by the trial court are fully supported by the evidence and will not be disturbed.

■■ Defendants contend that the collective bargaining agreement which existed between the union and the Motor Transit Company was binding on the plaintiff, claiming in the assignment that the plaintiff was a "successor" and that plaintiff was bound by the union contract terms.

There was no assignment of the union contract to the plaintiff, nor did the plaintiff accept as assignee any of the obligations of said contract, and on this contention, the learned trial judge found:

"* * * plaintiff did not take over the business of the Motor Transit Company; that he started a new business under his own franchise and with his own equipment; that the said Motor Transit Company had ceased operation on May 9, 1951, and that at the end of work on that day the members of the Union ceased to be employees of the said Transit Company; * *."

To sustain the contention that the contract between the union and the Motor Transit Company was binding on plaintiff, defendants cite: Blackwell v. Kercheval, 27 Idaho 537, 149 P. 1060; Building Service Employees v. Pinkerton, 19 C.C.H. Labor Cases 66–145; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206. None of the cases is in point and none supports the contention made.

Defendants next contend that a labor dispute within the meaning of Sec. 44–712, I.C. existed between the management of the Motor Transit Company and the defendants at the time plaintiff acquired the property.

A labor dispute is defined by Sec. 44–712, I.C. as follows:

"The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives."

Whether a labor dispute existed between the Motor Transit Company and the defendants within the meaning of this section, is unnecessary to determine. Plaintiff was not a party to the contract. Further the strike was not effective until after the contract between the union and the Motor Transit Company had been canceled by the union.

If a labor dispute existed (which we do not decide) between the union and the Motor Transit Company, the method provided in the contract to determine the rights, if any, of the Schells, was not followed, and whether or not the Schells were entitled to reinstatement, or back pay, or other benefits as employees of the Motor Transit Company is foreign to the issue.

The contract between the union and the Motor Transit Company provided:

"No employee who has been in service over 90 days will be disciplined or dismissed without the right of a fair and impartial investigation, provided that the employee desires such an investigation."

There was no showing here that the matter discussed with the plaintiff at the meeting held on the night of May 10th was determined or settled by request of the discharged employees, or otherwise, or the procedure provided for in the contract followed.

If the Schells were entitled to reinstatement or employment, it would be reinstatement by the Motor Transit Company and not by plaintiff, in whose employ the Schells had never been.

Defendants next contend that the plaintiff had full knowledge of the existence of a labor dispute between the union and the Motor Transit Company; that he was a new owner and having acquired by purchase the property on which the disputants had been employees, took over and inherited the labor dispute, if one existed.

The defendants do not contend that the labor dispute concerning the employment of the Schells is a dispute between the union and the plaintiff. Their contention is that the plaintiff "inherited" the dispute as the "successor" of the Pocatello Tran-

sit Company. The plaintiff did not succeed to the franchise of the transit company. The facts are that the plaintiff purchased certain equipment and leased other facilities from the transit company and commenced operations on his own responsibility on a permit from the city. Under the circumstances, if the parties were reversed, would anyone contend that the union was bound to the plaintiff by reason of its contract with the transit company? It becomes obvious at once that the plaintiff is not a "successor" of the transit company within the meaning of the contract, and that there is no mutuality of obligation. This Court has in numerous decisions held that mutuality must be shown, and it is generally recognized that at least a semblance of mutuality is essential even in a labor contract. 173 A.L.R. note 682.

This Court recently declared that the right to dispose of one's property and go out of business is a right guaranteed by both the Federal and state constitutions. O'Connor v. City of Moscow, 69 Idaho 37, 202 P.2d 401, 9 A.L.R.2d 1031. In Paul v. Mencher, 169 Misc. 657, 7 N.Y.S.2d 821 (review denied by N.Y. Court of Appeals, 279 N.Y. 813, 17 N.E.2d 684) the supreme court of New York held:

"It is the prerogative of any business man, with or without reason, to continue or discontinue in business, to change, alter or modify the nature of his business as he sees fit without necessity of explanation or excuse to anyone. When the plaintiff elected to discontinue his factory no one was privileged to complain even though it was done deliberately to avoid a labor dispute."

Wishny v. Jones, 169 Misc. 459, 8 N.Y.S. 2d 2; Uneeda Credit Clothing Stores v. Briskin, Sup., 14 N.Y.S.2d 964; M. Mittman & Co. v. Sirota, Sup., 111 N.Y.S.2d 100. This last case, decided in January of this year, is a parallel to the case before us.

Even under the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., in cases involving "unfair labor practices" (with which we are not here concerned) it is generally recognized that an employer has the right to discontinue or transfer his business or to move his factory to a new location. The determining factor in those cases is as to whether or not the transfer or change is made in good faith, and it is only in cases where such means is employed as a subterfuge to defeat the purposes of the labor law that it is regarded as an unfair labor practice. Diamond Full Fashioned Hosiery Co. v. Leader, D.C., 20 F.Supp. 467; notes 152 A.L.R. 149; 173 A.L.R. 674, at 676.

In this case defendants made no showing to the effect that the transfer was not made in good faith, in fact they admit that it was a bona fide sale, and they do not contend that it was a subterfuge to avoid the alleged labor dispute. The plain fact is that the transit company was operating at a

loss and under necessity of discontinuing its business. There is nothing to indicate that the plaintiff in undertaking to salvage the business agreed to or did assume any of the transit company's past obligations, if any there were.

The defendants to sustain their contention cite Newark Ladder & Bracket Sales Co. v. Furniture Workers Union, 125 N.J. Eq. 99, 4 A.2d 49. This case simply held that where a family business enterprise carried on through the instrumentality of three several groups and the employees of one were on strike, that the strikers were justified in considering the business as a unit. There was no "inherited" labor dispute.

In Sutter v. Amalgamated Ass'n of Street & Railway Workers 252 Ala. 364, 41 So.2d 190, a labor dispute existed and the court held that picketing of the place of business of the employer that might damage another user of a bus terminal was not unlawful.

The case of N.L.R.B. v. Blair Quarries, 4 Cir., 152 F.2d 25, considers what was or was not an unfair labor practice and could not be construed as supporting the contention here made.

In L. B. Hosiery Co., Inc., and Lee Maisel, dba Myerstown Hosiery Mills, 88 N.L.R.B. Decisions 1000, the board found the sale of the business to be fictitious. Further, that is not a decision of a court of last resort.

Defendants next contend that they were deprived of the rights guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

There being no labor dispute and the picketing being unlawful, the acts of the defendants were not protected by the First or Fourteenth Amendment to the constitution of the United States, and the court was not restricted by the constitution or otherwise in the issuing of an injunction and had jurisdiction so to do. See Amalgamated Meat Cutters & Butcher Workmen of North America v. Green, 119 Colo. 92, 200 P.2d 924; State v. Casselman, 69 Idaho 237, 205 P.2d 1131.

Under what circumstances and conditions a labor dispute might exist within the definition of Sec. 44-712, I.C. is unnecessary to determine.

There being no labor dispute existing, it necessarily follows that the trial court was not prohibited or restricted from hearing and determining the matter.

Defendants further complain that the injunction and restraining order is directed against (among others) the Pocatello Central Labor Council, not a party to the action. We do not so interpret it.

In negotiations between plaintiff and defendants, defendants had threatened, if their demands were not adhered to by the plaintiff, "we (referring to defendants) will put you on the unfair list". This was

apparently done. The restraining order itself was directed against the defendants and not against the Pocatello Central Labor Council, and the order could only apply to the responsibility of the defendants and should be so construed.

We find no error. Judgment and order denying a new trial are affirmed. Costs to respondent.

GIVENS, C. J., and TAYLOR, J., concur.

PORTER, Justice (dissenting).

I cannot concur in the majority opinion. Respondent was the business manager of the Motor Transit Company. He participated in the negotiations over the dispute between the Company and appellants. On May 4, 1951, he entered into a conditional sales contract with the Company wherein he purchased and acknowledged delivery, examination and acceptance of the motor vehicles of the Company. He paid nothing down but agreed to pay $600 per month commencing on June 10, 1951. On May 7, 1951, the City of Pocatello suspended the franchise of the Motor Transit Company for six months and granted a six months temporary franchise to respondent, both effective May 10, 1951. The Company continued to operate until May 10 when respondent "just took over and started to operating as the owner". He retained the same routes and schedules, used the same buses, tickets, tokens and transfers, leased and used the same shops and terminals as the Company, and used the same bus drivers at the same wages until the strike.

The agreement between the Company and appellants designates the "Pocatello Transit Company, its successors and assigns", as parties of the first part. Respondent was a successor to the Pocatello Transit Company with full knowledge of the existence of the labor dispute. By his acquisition of the business enterprise employing the involved employees, he should not be permitted to extinguish the rights of such employees. Sutter v. Amalgamated Ass'n, etc., 252 Ala. 364, 41 So.2d 190.

The dispute between the Pocatello Transit Company and appellants was a labor dispute within the meaning of Section 44-712, I.C. Boise Street Car Co. v. Van Avery, 61 Idaho 502, 103 P.2d 1107. It is so recognized in the agreement between the Company and appellants which provides:

"The purpose of this agreement is to provide a working understanding between the Company and the employes of the Company covered by this agreement, through their duly accredited representatives, affecting hours of labor, wages and basic working conditions, and to establish a means of settling any and all grievances, disputes and controversies arising between the Company and the above employes of the Company and pursuant to said pur-

pose the parties hereto agree as follows:"

I find nothing in the record showing such abuse of the right of peaceful picketing and of dissemination of knowledge of a labor dispute which justified the issuance of the injunction. The judgment should be reversed.

THOMAS, J., concurs in this dissent.