297 P.2d 519

**C. H. ELLE CONSTRUCTION CO., a corporation, Plaintiff-Appellant,**

v.

**POCATELLO BUILDING & CONSTRUCTION TRADES COUNCIL, an unincorporated association; J. Russell and Francis Sherman, Defendants-Respondents.**

**J. R. SIMPLOT COMPANY, a corporation, as such, and J. R. Simplot Company, a corporation, doing business under the firm name and style of Simplot Fertilizer Company, Plaintiffs-Appellants,**

v.

**POCATELLO BUILDING & CONSTRUCTION TRADES COUNCIL, an unincorporated association; J. Russell; Francis Sherman; Electricians Local No. 449; Teamsters, Chauffeurs, Warehousemen and Helpers Union No. 983; Boilermakers Union No. 182; Pocatello Labor Council, known as the Pocatello Central Labor Council; Clarence Lott; J. A. Russell and Mike Morelli, Defendants-Respondents.**

Nos. 8174, 8175.

Supreme Court of Idaho.

April 19, 1956.

Rehearing Denied June 4, 1956.

2

Louis F. Racine, Jr., Pocatello, for Elle Const. Co.

O. R. Baum and Ruby Y. Brown, Pocatello, for Simplot Co.

George R. Phillips, Pocatello, Clarence M. Beck, Reid W. Nielson, Salt Lake City, Utah, for respondents.

4

KEETON, Justice.

Appellant J. R. Simplot Company, a corporation, doing business as the Simplot Fertilizer Company, brought an action against the Pocatello Building & Construction Trades Council, an unincorporated association, and others, to secure an injunction to prohibit picketing and other activities engaged in by defendants and respondents. A similar action was brought by C. H. Elle Construction Company against the Pocatello Building & Construction Trades Council, and others, to enjoin the same activities complained of by appellant Simplot. The two cases were consolidated in the District Court and here for decision.

Appellant J. R. Simplot Company and Simplot Fertilizer Company will hereinafter be referred to as Simplot. Appellant C. H. Elle Construction Company will hereinafter be referred to as Elle. Defendants and respondents in both cases will be referred to as the Union.

A show cause order was issued in the Simplot case returnable on October 21, 1952, and the Union was directed to show cause why it should not be enjoined and restrained from performing the acts complained of in the complaint, namely: maintaining a picket line or any picket line at the entrance of the Simplot plant at Don, Idaho; notifying and advising business houses, concerns, and people in general not to have their employees cross a picket line, the picket line, or any picket line. A similar show cause order was issued in the Elle case returnable at the same time, by the terms of which the Union, and persons acting in its behalf, were directed to show cause why they should not be restrained and enjoined from maintaining pickets and picketing in front of or in the immediate vicinity of the Simplot Fertilizer Company in Power County, Idaho, and certain other activities engaged in by the Union.

The Union in each case appeared at the time directed, filed no pleading or showing whatsoever, and entered an objection to the jurisdiction of the court to hear the matter, which objection was overruled. Thereafter testimony was submitted by the Union, Simplot and Elle, and at the conclusion of the evidence, on October 25, 1952, the court in the Simplot case issued a temporary injunction that the Union, its officers, agents, servants and pickets, and persons acting in its behalf be enjoined and re-

strained from maintaining pickets and picket lines at the plan of Simplot at Don, Idaho, and from picketing said plant, and from advising any members of the individual crafts not to cross the picket line, or any picket line, and enjoined the doing of other acts complained of in the complaint. A similar temporary injunction was issued in the Elle case. Thereafter the Union, in each case, filed an answer to the complaint. The cases were heard on the merits on March 11, 1953, and from the testimony and other evidence, the court thereafter entered findings of fact, conclusions of law and judgments favorable to the Union and dissolved the temporary injunctions formerly issued. Simplot and Elle appealed from the judgments.

Simplot has for a number of years last past been, among other things, engaged in the operation of a phosphate fertilizer plant at Don, Idaho. Certain conversion work was undertaken by Simplot at the plant which included construction of certain stainless steel tanks. In the conversion of the plant certain heavy construction work had to be done. Elle is an independent contractor, equipped with heavy machinery to perform heavy construction work. A contract was entered into between Elle and Simplot in which a part of the reconstruction work and the conversion of the Simplot plant was to be done by Elle.

Simplot's employees are members of the Oil Workers International Union, an affiliate of the Congress of Industrial Organizations, hereinafter referred to as the CIO, and had been certified by the National Labor Relations Board as the representative for the purpose of collective bargaining with Simplot. Elle's employees are members of certain crafts associated with the American Federation of Labor. None of Simplot's employees was a member of the American Federation of Labor, and none of Elle's employees was a member of the CIO.

The Union, an unincorporated association of craftsmen, which represents the employees of Elle, had a contract with Elle which enumerated the conditions of employment, wage to be paid, and other matters, which, among other things, provided that all employees of Elle should be required to become and remain members of the Union as a condition of employment.

The court found that there was no labor dispute existing between the CIO Oil Workers International Union and Simplot, or its employees, and further found that a dispute (distinguishable from a labor dispute) arose and existed between Simplot and the Union.

During the progress of the reconstruction work, the Union established a picket line at the only entrance to the Simplot plant and there displayed an advertisement reading "Simplot Fertilizer Company Unfair to Organized Labor. Pocatello Build-

ing & Construction Trades A. F. of L." Simplot was then placed on the Union's unfair list and members of the Teamsters Union No. 983 and others were notified. Trucks hauling material to and from the Don plant, the workmen being members of the A.F.L., refrained and refused to cross the picket line or make deliveries to or pickups from the Don plant. Simplot's employees ignored the Union's picket or pickets and advertisement, and continued to work as though no picket line had been established.

█ It is the contention of the Union that in the reconstruction being done at the Don plant, the craftsmen who are members of the A.F.L. should perform all such reconstruction work or none. The purpose of the picket line and other activities engaged in by the Union directed against Simplot was to compel Simplot to employ A.F.L. craftsmen or labor in the construction work and pay a higher wage than Simplot was allegedly paying.

The work which the Union insisted should be done by A.F.L. labor was principally in the fabrication of the tanks to be installed. Employees of Simplot were specially trained to do this work and this item was the principal one giving rise to the controversy. At one time a crane used to unload steel by Elle which required five men to man, and Elle not having such employees, some of Simplot's employees assisted.

During negotiations between the parties, a representative of the Union advised Simplot that the Union would permit the Simplot employees to do the work they were doing if they were paid construction wages and a payment made to the Union of $2 per man per week. Neither such employees of Simplot nor their bargaining agent made any objection to doing the work, or the wages paid.

By what authority the Union, or its representatives, assumed to speak for Simplot's employees or to direct Simplot as to what work its employees should do or refrain from doing, or what wages should be paid by Simplot, is not explained.

It is the contention of both Elle and Simplot that the work being done by Simplot's employees was not work which Elle should perform by reason of the contract entered into between Elle and Simplot.

The Union contends that the bargaining representative (CIO) of Simplot's employees was limited to "production and maintenance" and that in the construction work being done by Simplot, the employees of Simplot should not have been permitted to do any of the work in the reconstruction of the plant.

Elle was only to do the work in the reconstruction directed by Simplot. Other work was to be performed by Simplot's employees.

The question of what work Elle was to perform and work to be performed by Simplot was a matter to be determined by agreement between Elle and Simplot. Simplot could have contracted with Elle to do all the work, a part, or none. Under the contract of employment entered into between Elle and the Union, all of the employees of Elle would have to be members of the A.F.L., but the Union is not in a position to complain that Simplot had not delegated Elle to do more of the work than the parties contracted for or that Simplot paid wages allegedly less than Elle employees would have been paid for doing similar work.

If Simplot's employees engaged in the fabrication or finishing of the stainless steel tanks were not paid wages conformable to Elle construction workers, this was a matter over which only Simplot's employees, or its bargaining representative, would have a right to complain, and the contention advanced that Simplot's wage scale was lower than the A.F.L. scale does not present a controversy in which the Union would in anywise be involved, or concerning which it had any right to complain.

There was no labor dispute between Elle and its employees and the activities of the Union were not directed against Elle. It was not shown or attempted to be shown that Elle violated any provision of its contract of employment with the Union. Nor is there any showing that Simplot violated any obligation to any of its employees.

The contention of the Union that the court had no jurisdiction of the matter and that all such questions as are here in dispute have been preempted, supplanted and covered in the Anti-injunction Acts, 47 U.S.Stat. at Large 70, 29 U.S.C.A. §§ 101 to 115 and the National Labor Relations Act, 29 U.S.C.A. §§ 151 to 168 inclusive, has been decided by this Court adversely in State v. Casselman, 69 Idaho 237, 205 P.2d 1131; Poffenroth v. Culinary Workers Union Local No. 328, 71 Idaho 412, 232 P.2d 968; Tarr v. Amalgamated Ass'n, etc., 73 Idaho 223, 250 P.2d 904. Cases from other jurisdictions holding that state courts have jurisdiction are: Milwaukee Boston Shoe Co. v. American Federation of Hosiery Workers, 269 Wis. 338, 69 N.W.2d 762; General Building Contractors Ass'n v. Local Unions, 370 Pa. 73, 87 A.2d 250; G. H. & E. Freydberg, Inc., v. International Ladies Garment Workers, Sup., 128 N.Y.S.2d 470; Fashioncraft, Inc., v. Halpern, 313 Mass. 385, 48 N.E.2d 1; Goodwins, Inc., v. Hagedorn, 303 N.Y. 300, 101 N.E.2d 697, 32 A.L.R.2d 1019; Opera on Tour, Inc., v. Weber, 285 N.Y. 348, 34 N.E.2d 349, 136 A.L.R. 267; Roth v. Local Union No. 1460, 216 Ind. 363, 24 N.E.2d 280; Ostroff v. Laundry & Dye Works, 37 Wash.2d 595, 225 P.2d 419; Carpenters & Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; United Const. Workers v.

**8**

Laburnam Const. Corp., 347 U.S. 656, 74 S. Ct. 833, 98 L.Ed. 1025. Many other cases with a similar holding could be cited.

Sec. 44–703, I.C., a part of the Labor Injunction Relief Act, Secs. 44–701 to 44–713, I.C., incl., is a restriction on the power of the court to issue injunctions in certain cases without following a specified procedure as defined in Sec. 44–705, I.C. These provisions are applicable only in cases where a labor dispute exists as defined by the Act, Sec. 44–712, I.C. Without the restrictions and limitations contained in the Anti-injunction Act, a District Judge would have general jurisdiction in all such matters and the Anti-injunction Statute does not deprive the trial court of jurisdiction. We hold in the matter before us that the controversy here existing has not been preempted, supplanted or covered by the Federal statutes above cited, and the district court had jurisdiction.

A labor dispute is defined by Sec. 44–712, I.C. as follows:

"The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives."

The Union contends that Sec. 44–703, I.C. which reads:

"No court, nor any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from doing, whether singly or in concert any of the following acts:
\*      \*      \*      \*      \*

"(e) Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, *any dispute,* whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be, without intimidation or coercion, or by *any other method not involving* fraud, violence, breach of the peace, or threat thereof; \* \* \*." (Emphasis supplied.)

covers any dispute between labor and management as distinguished from a labor dispute. All of the Anti-injunction Statute, Secs. 44–701 to 44–713, I.C., inclusive, covers certain regulations and relationships between labor and management and the dispute referred to Subd. (e) of Sec. 44–703, I.C. means a *labor dispute* as defined in Sec. 44–712, I.C. and not a dispute foreign to that relationship. The dispute, if one exists, between Simplot and the Union is not a labor dispute and the Anti-injunction Act above referred to does not limit the District Court's jurisdiction in the matter before us.

It is contended by Simplot and Elle that the activities of the Union complained of are prohibited by the Secondary Boycott

Act, Secs. 44–801 to 44–803, I.C., inclusive. Sec. 44–801 reads:

"It shall be unlawful to cause or threaten to cause, and/or combine or conspire to cause or threaten to cause, injury to one not a party to the particular labor dispute, to aid which such boycott is initiated or continued, whether by (a) withholding patronage, labor, or other beneficial business intercourse; (b) picketing; (c) refusing to handle, install, use or work on particular materials, equipment or supplies; or (d) by any other means, in order to bring him against his will into a concerted plan to coerce or inflict damage upon another or to compel the party with whom such labor dispute exists to comply with any particular demands."

The activities complained of, engaged in by the Union, constitute a secondary boycott prohibited by Sec. 44–801, I.C. See State v. Casselman, 69 Idaho 237, 205 P.2d 1131; Newport Industries, Inc., v. Lake Charles Metal Trades Council, D.C.La., 85 F.Supp. 517; International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810.

We hold that the activities of the Union here complained of amount to a secondary boycott and such activities are prohibited.

The Union contends that its complained of picketing, advertising and other activities are constitutionally protected as freedom of speech and freedom of the press. Amend. 1, Constitution of the United States, Art. I, Sec. 9, Idaho Constitution.

A lengthy discussion of what protection is afforded by the above cited constitutional provisions and where such protection ends would simply be to re-emphasize and re-assert statements contained in many decisions.

The same contention as is here made was advanced in State v. Casselman, 69 Idaho 237, 205 P.2d 1131, and decided adversely to the Union's contention.

The right to picket and exercise free speech against an employer does not authorize picketing or other conduct in such a way as to injure someone not a party to a labor dispute. Carpenters & Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299.

The constitutional guarantee of freedom of speech and of the press is not encroached upon by affording appropriate remedies

10

for the abuse of such privilege. Robison v. Hotel & Restaurant Employees Loc. 782, 35 Idaho 418, 207 P. 132, 27 A.L.R. 642.

We conclude the activities engaged in by the Union were not proper exercises of freedom of speech or of the press; and the Union is not in a position to claim protection on that theory.

■ The contention of the Union that Sec. 44–712, I.C. is unconstitutional in failing to protect minorities is not here presented for determination. The Union did not represent a majority, a minority, or any of Simplot's employees. Hence it may not challenge the statute as discriminating against minorities. Poffenroth v. Culinary Workers Union Local No. 328, 71 Idaho 412, 232 P.2d 968.

There is no showing that either Elle or Simplot was unfair to organized labor under any definition called to our attention or of which we are aware.

The judgment is reversed and the cause remanded, with instructions to the trial court to make the temporary injunction issued in each case permanent. Costs to appellants.

TAYLOR, C. J., and ANDERSON and SMITH, JJ., concur.

PORTER, J., sat at the hearing but did not participate in the opinion.