No. 18,336.

BUILDING CONSTRUCTION TRADES COUNCIL, A.F. OF L.,
ET AL. *v.* AMERICAN BUILDERS, INC.
(337 P. [2d] 953)

Decided April 13, 1959.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for plaintiffs in error.

Messrs. GOULD, MOCH & SCHERMERHORN, for defendant in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

MAY a state court enjoin a labor union in its resort to coercive measures (striking, peaceful picketing and supplementary activities, in this case) to wring from an employer whose operation affects commerce a closed-shop agreement, and thereby force non-union employees to become members of the union where compliance with such union demands would collide with express prohibitions of the Labor Peace Act (C.R.S. '53, 80-5-1, et seq.) of this state? If such power reposes in the state court, we must affirm the injunction entered in this case; if not, we must reverse. To affirm or reverse the judgment depends upon whether the "Labor Management Relations Act, 1947" excludes application of state laws to the controversy presently being considered.

Applying the familiar rule that this court will not disturb the findings of the trial court when the record reveals, as it does here, evidence to support them, we accept the trial court's resolution of fact that the unions utilized coercive tactics to effect their purpose. If subject to state action, such tactics fell within the interdiction of the law of this state, were illegal and thus enjoinable. Our problem, then, is to determine whether the conduct of the unions made them amenable to state law.

State legislative policy concerning employer-employee relations is declared in C.R.S. '53, 80-5-4. Relevant to an understanding of our problem is the following part thereof:

" * * * employees shall have the right of self-organi-

zation and the right to form, *join* or *assist* labor organizations, * * *. Such employees and each of them shall also have the right *to refrain* from any or all of such activities." (Emphasis supplied.)

C.R.S. '53, 80-5-6, defines unfair labor practices committed by either employer or employee. Material to the question at hand are:

"(1) It shall be an unlawful labor practice for an employer individually or in concert with others:

"(a) To interfere with, restrain or coerce his employees in the exercise of the rights guaranteed in section 80-5-4.

\* \* \*

"(c) To encourage or discourage membership in any labor organization * * * by discrimination in regard to hiring, tenure or other terms or conditions of employment; provided, that an employer shall not be prohibited from entering an all-union agreement with the representatives of his employees, in a collective bargaining unit, where three-quarters or more of his employees shall have voted affirmatively by secret ballot in favor of such union agreement in a referendum conducted by the commission.

\* \* \*

"(e) To enter into an all-union agreement except in the manner provided in subsection (1) (c) of this section.

\* \* \*

"(2) It shall be an unfair labor practice for an employee individually or in concert with others:

\* \* \*

"(b) To coerce, intimidate or induce any employer to interfere with any of his employees in the enjoyment of their legal rights, including those guaranteed in section 80-5-4, or to engage in any practice with regard to his employees which would constitute an unfair labor practice if undertaken by him on his own initiative."

To refute the contention of the unions that American

Builders, Inc., had recourse only to the Labor Management Relations Act, 1947, for redress, and to convince that the federal government has left to the state authority to enforce the state law applicable to the instant situation, American Builders, Inc., site section 14 (b) of the Labor Management Relations Act, 1947 (29 U.S.C.A. §164[b]):

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law."

Stress is thus placed by the employer (1) on illegality of purpose (activity in contravention of state law) in striking, picketing and supplementary activities, notwithstanding such conduct is peaceful and orderly, *Denver Milk Producers, Inc. v. International Brotherhood of Teamsters,* 116 Colo. 389, 183 P. (2d) 529; *Amalgamated Meat Butcher Workers v. Green,* 119 Colo. 92, 200 P. (2d) 924; *International Brotherhood of Teamsters v. Hanke,* 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; *Building Service Union v. Gazzam,* 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; *International Brotherhood of Teamsters v. Vogt, Inc.,* 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed. (2d) 1347, and (2) on the exemption from federal authority granted by 29 U.S.C.A. §164 (b), as vindicating invocation of state competence over the employer-employees' difficulty in this case.

But the unions oppose these views, and advocate consideration of other provisions of the Labor Management Relations Act, and of decisions of the Supreme Court, which they deem beyond peradventure controlling. It is their position that, the employer's business being affective of interstate commerce, federal competence holds sole sway.

The assurance with which the parties advance their contentions is readily understandable when one realizes

the existence of "growing disorder and difficulties" in state and federal power arising from decisions of the Supreme Court of the United States, *"The Supreme Court, Congress and State Jurisdiction Over Labor Relations,"* Meltzer, The University of Chicago Law School Record, Special Supplement, Vol. 8, Autumn 1958, No. 1, pg. 95; excerpts may be extracted from decisions which apparently support either contention.

After a careful review of the state and federal statutory law, and the decisions of the Supreme Court of the United States regarding situations like or similar to that presented to us, we hold that the controversy should have been determined under the federal law. Our reasons for so holding follow.

1. The Labor Management Relations Act contains provisions which find their counterparts in the above quoted portions of the Labor Peace Act of this state. Thus, 29 U.S.C.A. §157 has its equivalent in C.R.S. '53, 80-5-4, supra, and reads as follows:

"Employees shall have the right to self-organization, to form, *join* or *assist* labor organizations, * * * and shall also have the right to *refrain* from any or all of such activities * * * " (Emphasis supplied.)

29 U.S.C.A. §158 in the following quoted parts has as its facsimile the above quoted parts of C.R.S. '53, 80-5-6:

"(a) It shall be an unfair labor practice for an employer —

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

\* \* \*

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by

any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159 (a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made and has at the time the agreement was made or within the preceding twelve months received from the Board a notice of compliance with section 159 (f), (g), (h) of this title, and (ii) unless following an election held as provided in section 159 (e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement; *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

\* \* \*

"(b). It shall be an unfair labor practice for a labor organization or its agents —

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: \* \* \*

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an em-

ployee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;"

Which law should we apply where the conduct condemned by the Colorado Peace Act is also reprehensible under the Labor Management Relations Act, and where both acts prohibit such conduct for like reasons? In such case, does the federal authority displace the state code where the strikes and picketing, etc., affect a business which has an impact on interstate commerce, and such activities are orderly and peaceful? An easy answer eludes the mental grasp, for answers in many of the federal decisions are mirages when closely studied. In our considered judgment, however, the cases hereinafter discussed should, and do, govern our course of action in this case.

Factually, *Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, is similar to the case before us. The union had picketed the trucking company, the operations of which "formed a link to an interstate railroad." Although the trucking company at no time "objected to their employees joining the union," the union was successful in recruiting only four of its twenty-four employees before the picketing began. "Picketing was orderly and peaceful, but drivers for other carriers refused to cross the picket line," causing an almost complete loss of business. The Pennsylvania courts "found that [the union's] purpose in picketing was to coerce petitioners into compelling or influencing their employees to join the union."

Here was a case where state preventive remedies found duplication in federal law. The Supreme Court pointed out policy complications where federal and state prohibitions were parallels and that the contemporaneous or successive administration of both would create

"conflict * * * in remedies, not rights" "when two separate remedies are brought to bear on the same activity."

Speaking through Justice Jackson, the court made these pertinent remarks:

"Congress has taken in hand this particular type of controversy where it affects interstate commerce. In language almost identical to parts of the Pennsylvania statute, it has forbidden labor unions to exert certain types of coercion on employees through the medium of the employer. It is not necessary or appropriate for us to surmise how the National Labor Relations Board might have decided this controversy had petitioners presented it to that body. The power and duty of primary decision lies with the Board, not with us. But it is clear that the Board was vested with power to entertain petitioners' grievance, to issue its own complaint against respondents and, pending final hearing, to seek from the United States District Court an injunction to prevent irreparable injury to petitioners while their case was being considered. The question then is whether the State, through its courts, may adjudge the same controversy and extend its own form of relief.

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.

* * *

"The detailed prescription of a procedure for restraint

of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint. For the policy of the national Labor Management Relations Act is not to condemn all picketing but only that ascertained by its prescribed processes to fall within its prohibitions. Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits.

\* \* \*

*"We conclude that when federal power constitionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right.* To the extent that the private right may conflict with the public one, the former is superseded. To the extent that public interest is found to require official enforcement instead of private initiative, the latter will ordinarily be excluded. Of course, Congress, in enacting such legislation as we have here, can save alternative or supplemental state remedies by express terms, or by some clear implication, if it sees fit." (Emphasis supplied.)

Confirmation that federal authority is solitary and exclusive in situations where both state and federal laws forbid certain conduct and provide machinery for enforcement is made doubly clear by the following quoted portions from *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546:

"The principal question that the case raises, whether the state court had jurisdiction to enjoin the IAM's conduct or whether its jurisdiction had been pre-empted by the authority vested in the National Labor Relations Board, has an importance in the federal-state relations

regarding industrial controversies that led us to grant certiorari. 348 U.S. 808.

"The Court has had numerous occasions to deal with this delicate problem of the interplay between state and federal jurisdiction touching labor relations. It is helpful to a consideration of this latest phase briefly to summarize where our decisions, under both the Wagner Act and the Taft-Hartley Act, have brought us.

\* \* \*

"2. *A State may not enjoin under its own labor statute conduct which has been made an 'unfair labor practice' under the federal statutes.* Such was the holding in the *Garner* case, supra. The Court pointed out that exclusive primary jurisdiction to pass on the union's picketing is delegated by the Taft-Hartley Act to the National Labor Relations Board. See also *Plankinton Packing Co. v. Wisconsin Employment Relations Board,* 338 U.S. 953; *Building Trades Council v. Kinard Construction Co.,* 346 U.S. 933. And in *Capital Service, Inc. v. Labor Board,* 347 U.S. 501, a picket line established at retail stores to induce the organization of a manufacturer's employees was enjoined by the State as contrary to its public policy. This Court granted a limited certiorari which assumed that exclusive jurisdiction over the subject matter was in the National Labor Relations Board. The Board was allowed to obtain an injunction against enforcement of the conflicting state court injunction." (Emphasis supplied.)

The last word on duality of remedy was spoken by the Supreme Court of the United States in January of this year in the case of *Hotel Employees Union v. Sax Enterprises, Inc.,* and related cases. In a per curiam opinion the court sententiously restated the principle of pre-emption in litigation involving parallel bans on management-labor conduct. These citations teach that the state cannot supply a congruous yet rival remedy to that furnished by the federal Act. And there can be no con-

currency of remedy; the federal remedy, when ap-
plicable, is pre-emptive and solitary.

2. The Labor Management Relations Act in essence
establishes exclusion of state power in matters involving
an unfair labor practice affecting commerce. How else
may one interpret 29 U.S.C.A. §160, which provides:

"§160. Prevention of unfair labor practices — (a)
Powers of Board generally

"(a) The Board is empowered, as hereinafter pro-
vided, to prevent any person from engaging in any un-
fair labor practice (listed in section 158 of this title)
affecting commerce. *This power shall not be affected by
any other means of adjustment or prevention that has
been or may be established by* agreement, *law;* or other-
wise: *Provided,* That the Board is empowered by agree-
ment with any agency of any State or Territory *to cede
to such agency jurisdiction* over any cases in any indus-
try (other than mining, manufacturing, communica-
tions, and transportation except where predominantly
local in character) even though such cases may involve
labor disputes affecting commerce, *unless the provision
of the State or Territorial statute applicable to the deter-
mination of such cases by such agency is inconsistent
with the corresponding provision of this subchapter* or
has received a construction inconsistent therewith."
(Emphasis supplied.)

Important to our task here is the power vested
in the National Labor Relations Board to "cede" juris-
diction to a state agency of a case having to do with a
labor dispute affecting commerce if the state has a stat-
ute applicable to the problem and not inconsistent with
the federal Act. Admittedly, the likeness of the federal
and state provisions under discussion creates a necessary
condition for the cession of authority by the Board to
Colorado to act in the premises. But until cession is
made, Colorado is without power; any other construc-
tion would do violence to plain, unequivocal language.

Decisions of the Supreme Court of the United States

recognize the purport of this language as being what we have said it is. *Amalgamated Ass'n of Employees v. Wisconsin Board,* 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364; *Guss v. Utah Labor Board,* 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed. (2d) 601; *Amalgamated Meat Cutters, etc. v. Fairlawn Meats, Inc.,* 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed. (2d) 613.

Said §160 (a) "is the *exclusive* means whereby States may be enabled to act concerning the matters which Congress has entrusted to the National Labor Relations Board." (Emphasis supplied.) *Guss v. Utah Labor Board,* supra. It has been said that "Congress demonstrated that it knew how to cede jurisdiction to the states. Congress knew full well that its labor legislation 'preempts the field that the act covers insofar as commerce within the meaning of the act is concerned' and demonstrated its ability to spell out with particularity those areas in which it desired state regulation to be operative." *Amalgamated Ass'n of Employees v. Wisconsin Board,* supra. If this section of the Act "operates to exclude state labor boards from disputes within the National Board's jurisdiction *in the absence of a cession agreement,* it must also exclude courts." (Emphasis supplied.) *Amalgamated Meat Cutters v. Fairlawn Meats,* supra.

 We conclude that what has not been ceded is necessarily completely and wholly retained. This being a case involving an unfair labor practice in an interstate operation over which the federal board has jurisdiction until and unless it cedes jurisdiction to Colorado, the trial court acted in a vacuum.

Should Section 14 (b) of the Labor Management Relations Act (29 U.S.C.A. §164 [b]) change our views hereinabove expressed? For two very good reasons our answer is in the negative. These reasons follow.

1. Said section has been part of the Act for some years. During those years a number of cases involving federal and state competence in connection with overlap-

ping laws have been before the Supreme Court of the United States. In those years this section has never been applied to a factual situation comparable to the one here presented. As late as January of this year pronouncements have issued from that judicial body contrary to the position taken by American Builders, Inc., and it is our belief that, had the court felt the section applied, it would have so determined.

2. This section recognizes "right to work" laws. *Grimes & Hauer, Inc. v. Pollock,* 163 Oh. St. 372, 127 N.E. (2d) 203. Where the business in question operates in a state recognizing "right-to-work" laws, albeit the business is interstate in nature or has an impact on commerce, the federal authority yields what it recognizes as lawful in certain circumstances to that which the state declares prohibited in any circumstances. But the Act does not in so yielding say in so many words or by implication that there is delegated to the state jurisdiction to enforce the state prohibition. *International Brotherhood v. Riley,* 95 N.H. 162, 59 Atl. (2d) 476. Until the federal courts spell out jurisdiction, we are inclined to hold that this would be another instance requiring cession by the Board before the state could act.

Remaining intact, as a very important part of the Act, is the lone jurisdiction of the National Labor Relations Board to hear and determine labor disputes affecting commerce, with the authority in the Board to cede to the state jurisdiction in a particular dispute, and then only if the state law is consistent with the federal statute. In effect, then, this section broadens the basis for cession, and would permit the Board to delegate to the state jurisdiction to hear and determine a labor dispute affecting commerce where the dispute involved either the execution or application of an agreement violative of the state's "right-to-work" law.

Colorado does not have a "right-to-work" law. An agreement requring membership in a labor organization as a condition of employment is under certain circum-

stances permitted in this state. C.R.S. '53, 80-5-6. Said Section 14 (b) only applies where such an agreement could not be executed or applied under any circumstances within the state. And in the first instance, the Board would have jurisdiction to apply said section in a proper case, or cede to a state agency authority to try the matter.

For the reasons stated in this opinion we must, and do, reverse the judgment.

MR. JUSTICE SUTTON not participating.