INDEPENDENT DAIRY WORKERS UNION OF HIGHTSTOWN, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. MILK DRIVERS AND DAIRY EMPLOYEES LOCAL No. 680, *ET AL.*, DEFENDANTS-APPELLANTS, AND DECKERS DAIRY, INC., DEFENDANT-RESPONDENT.

Argued April 6 and 7, 1959—Decided June 17, 1959.

176

Mr. *Thomas L. Parsonnet* argued the cause for defendants-appellants (*Messrs. Parsonnet, Weitzman & Oransky,* attorneys; Mr. *Thomas L. Parsonnet,* of counsel).

Mr. *Ernest Gross* argued the cause for plaintiffs-respondents (*Messrs. Gross, Weissberger & Spritzer,* attorneys; Mr. *Gross* and Mr. *Herbert W. Weissberger,* of counsel).

Mr. *Edward W. Currie* argued the cause for defendant-respondent.

The opinion of the court was delivered by
WEINTRAUB, C. J. The individual plaintiffs are employees of defendant Deckers Dairy, Inc. (herein called "Decker") and constitute the membership of plaintiff union (herein called "Independent Union"). Plaintiffs sued to enjoin defendant union (herein called "Local 680") and some of its members from coercing Decker to breach a contract made by Decker with the Independent Union as the bargaining agent of the employees, and to restrain Decker from abrogating the agreement or from recognizing Local 680 as the bargaining representative during the contract period. The parties agree that Decker is engaged in intrastate commerce; no one suggests federal preemption.

The matter first came before us by appeal from a denial of injunctive relief *pendente lite.* This court ordered such relief. The opinion stated in part that "The case may then proceed to final hearing in order to develop the full factual background and especially the charge, unsupported by any proof before us, that the Independent Union is a management product." *Independent Dairy Workers Union of Hightstown v. Milk Drivers and Dairy Employees Local No. 680,* 23 *N. J.* 85, 102 (1956), commented upon in 12 *Rutgers L. Rev.* 98 (1957). The trial court found for plaintiffs, and the final judgment is now here on the appeal of Local 680 and its member defendants. certified by us before the Appellate Division acted upon it.

Decker purchases milk from local farmers, processes it, and sells the products to stores, restaurants and family consumers through either its employees or sub-dealers. Local 680 represents employees of others engaged in the same industry. In response to an inquiry by an employee of Decker, Local 680 expressed an interest in representing the employees if they produced a majority in favor of it. The trial court found, and we agree, that Decker dismissed four employees because of their interest in Local 680. Picketing followed. In addition to seeking the reinstatement of the men with back pay Local 680 demanded recognition and a contract even though it did not represent a majority of the men. Local 680 declined to accept anything less than recognition and a contract, taking the position that the unfair discharge of the men by Decker generated an atmosphere in which a free election would be impossible.

The Independent Union was created after the onset of picketing. At an election conducted by the Honest Ballot Association, a reputable organization, the Independent Union was unanimously chosen as bargaining representative. The election was held without notice to Local 680. Upon receiving the Association's certification, Decker recognized the Independent Union, and a two-year contract with provision for annual renewals was negotiated. Notice of the contract was given to Local 680, which however continued to picket.

The picketing was peaceful. It covered Decker's premises and as well on a roving basis the retail establishments which handled Decker's products. Local 680 stipulated, for the purpose of the present case, that its picketing was effective, resulting in economic harm to Decker and the individual members of the Independent Union.

As noted above, Local 680 urged upon the prior appeal that the Independent Union was company-dominated. At the final hearing Local 680 withdrew the issue. It gave as its reason that it wished to seek a reconsideration by this court of its holding upon the prior appeal that Article I, paragraph 19 of the Constitution of New Jersey, forbade

picketing for recognition in the face of an election and a contract made with the representative of the employees' choice. Whatever the reason, we must accept the premise that the Independent Union is what its name literally implies. We add also that Local 680 did not in this suit challenge the validity of the election, either by reason of the manner in which it was conducted or any infection consequent upon the wrongful discharge of the four employees.

The remaining factual matter necessary for decision is the purpose for which the picketing was conducted. In its brief filed with us Local 680 states:

"From all of this testimony, it is clear that there were a number of objectives in the picketing and distribution of leaflets. They were,
 (1) Reinstatement.
 (2) Securing of back pay for time lost due to unfair discharges.
 (3) Execution of collective bargaining contract with Local 680. This was demanded until the date of the receipt of the notice, Exhibit P–5 [*sic*, Ex P–9, the letter advising Local 680 of the execution of the contract with the Independent Union.] There is no evidence as to the demand of the union subsequent to that date, *and its objective thereafter is subject to speculation.*" (Emphasis added.)

The trial court correctly found that initially the picketing was for the three specific purposes thus claimed by Local 680 but that the first two disappeared before injunctive relief was granted *pendente lite* and remained non-existent at the final hearing. The testimony of the discharged employees revealed plainly that they became permanently employed elsewhere and that none would consider reemployment with back pay unless Decker would also recognize Local 680 as the representative of all the employees. We agree with the trial court that the issue at final hearing was factually crystallized into the question whether Local 680, which represented neither employees nor former employees interested in reinstatement, may picket to compel abrogation of a valid contract between the employer and the Independent Union and recognition of Local 680 as the bargaining representative of employees it did not in fact represent.

We italicized above so much of Local 680's statement of facts as suggested that following notice of the making of the contract the objective of the picketing became "subject to speculation." Later in its brief and in the oral argument before us Local 680 urged that after the discharged employees assumed the final position described above, the purpose of the picketing should be deemed to have been to organize the employees with a view toward seeking recognition at the expiration of the contract. No such issue was tendered at the trial. Nor was there evidence to support it. We cannot accept in academic fashion the questions which that factual pattern may present.

## I.

Article I, paragraph 19 of the Constitution of 1947 reads:

"Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing."

■ Local 680 agrees the first sentence guarantees a right in employees as against their immediate employer but disputes the view that it bars intervention by strangers to the relationship, stressing the absence from the first sentence of the phrase "through representatives of their own choosing" which appears in the second sentence. It points to some situations of transitory employment in which the work force may not remain stable long enough to permit selection of a representative from within the employer's men. It points further to the understandable concern of employees of competing employers with the maintenance of wages and other conditions of employment which may be affected by the arrangements between a specific employer and his own men. *American Federation of Labor v. Swing*, 312 *U. S.* 321, 326, 61 *S. Ct.* 568, 85 *L. Ed.* 855, 857 (1941); *American Steel Foundries v. Tri-City Central Trades Council*, 257 *U. S.*

184, 209, 42 *S. Ct.* 72, 66 *L. Ed.* 189, 200 (1921); *Bayonne Textile Corp. v. American Federation of Silk Workers,* 116 *N. J. Eq.* 146, 156 (*E. & A.* 1934). It argues that if the Constitution be construed to make a final decision, there would be no room for legislative action prescribing the appropriate bargaining unit, and urges that there should remain open an area for the play of many views. In its final statement, however, Local 680 reaches for the opposite pole, to wit, that the Constitution was intended to establish beyond legislative control a right in all employees to wage economic combat against all employers in the industry notwithstanding the free choice of the employee-unit immediately concerned in the labor-management relationship. Thus, under the latter construction, a union which represents none of the employees immediately involved could contend with a rival union until the exhaustion of one of them or of the employer itself. We have no difficulty in rejecting that construction. The more imposing question is whether Article I, paragraph 19 leaves the area first described above open for legislative or judicial decision.

The constitutional issue, thus stated, may prove to be far-reaching. It is axiomatic that fundamental issues should not be entertained unless a decision is imperatively required. We think the issue is not thus before us, for the reason that if it be assumed that plaintiffs are unaided by the provision, they nonetheless are entitled to prevail on the facts before us.

## II.

Local 680 urges the judiciary be inert because it cannot provide a mechanism equal to the task of formulating and effectuating a fair pattern of labor-management relations. It suggests that nothing less than a statute and an administrative agency can contend fairly and expeditiously with the inevitable problems. Legislation may indeed be appropriate and surely would not be unwelcome. The considerations thus emphasized might well be addressed to the Legislature.

But it is contrary to the judicial grain to create a no-mans-land in which the outcome of any and all controversies would depend upon the strength of the combatants. It has been the traditional role of the courts to deal with matters affecting labor relations, *Hughes v. Superior Court of State of California,* 339 *U. S.* 460, 467, 70 *S. Ct.* 718, 94 *L. Ed.* 985, 993 (1950), and until the Legislature intervenes, the judicial obligation remains.

█ It should not be assumed that it is beyond the capacity of the judiciary to remedy the wrongs which appellants claimed. For the discharge of employees in violation of their right under Article I, paragraph 19 of the Constitution, an action for damages may well lie, and as well a suit to reinstate with back pay and to forbid discharge because of union activity. See *Texas & New Orleans Railroad Co. v. Brotherhood of Railway and Steamship Clerks,* 281 *U. S.* 548, 50 *S. Ct.* 427, 74 *L. Ed.* 1034 (1930); but see *Quinn v. Buchanan,* 298 *S. W. 2d* 413 *(Mo. Sup. Ct. 1957).* Such enforcement of the constitutional guaranty would give to employees the assurance they need to permit them to pursue their own self-interest. It would free them to respond to appeals of others in the industry to seek improved terms and conditions of employment to the end that there may be eliminated competitive advantages gained by employers through sub-standard labor practices. We here speak in general terms, without reference to the agreement between the Independent Union and Decker. In fact, we add parenthetically there is nothing to suggest that Local 680 was activated by some hurtful discrepancy. The contrary is indicated by the testimony of its representative that when his interest was initially engaged by an employee of Decker he replied that Local 680 would not enter the scene unless the employees of Decker themselves produced a majority who desired membership in that union.

So also, if Local 680 had wished to question the election because of Decker's unfair practice, the Chancery Division would have been equal to the issue. It could have ordered

another election with such protective provisions as would be appropriate to assure an uncoerced result.

With respect to picketing, the questions before us are (A) whether as a matter of substantive law plaintiffs are entitled to protection against peaceful picketing conducted for the objective already described, and (B) whether the Anti-Injunction Act bars relief.

## A.

The law protects parties to contractual and other relationships against unjustifiable interference. See *Louis Kamm, Inc. v. Flink,* 113 *N. J. L.* 582 (*E. & A.* 1934). Whether the interference is of that character depends upon the sufficiency of the interest which the stranger seeks to advance. Here the contest was for recognition. The Independent Union emerged as the unanimous choice of the employees concerned. It bargained collectively for a contract for a period of time which cannot be said to be unreasonable. The law strongly favors collective bargaining, *Kennedy v. Westinghouse Electric Corp.,* 16 *N. J.* 280, 284 (1954); it must equally favor the end product of the process. We are satisfied that sound policy forbids the use in such circumstances of economic weapons designed as here to coerce the employer either to breach the agreement or to force its employees to retreat from the decision they made. Thus, without resort to our constitutional provision, we adhere to the conclusion reached on the first appeal. 23 *N. J.* at *page* 98. It is amply supported by reason and by the authorities there cited. It is pertinent to note that although federal legislation is not applicable, yet it, the most pervasive force on the industrial scene, embraces the same policy. 29 *U. S. C. A.,* §§ 157 and 158.

We find no substance in Local 680's insistence that a restraint against peaceful picketing in the circumstances of this case offends the right of free speech protected by the due process clause of the Fourteenth Amendment. It has

been repeatedly held that peaceful picketing may be enjoined if its purpose is to violate a significant and reasonable state policy established either by legislative or judicial decision. *Giboney v. Empire Storage & Ice Co.,* 336 *U. S.* 490, 69 *S. Ct.* 684, 93 *L. Ed.* 834 (1949); *Hughes v. Superior Court of State of California, supra* (339 *U. S.* 460, 70 *S. Ct.* 718, 94 *L. Ed.* 985 (1950)); *International Brotherhood of Teamsters, etc. v. Hanke,* 339 *U. S.* 470, 70 *S. Ct.* 773, 94 *L. Ed.* 995 (1950); *Building Service Employers International Union Local 262 v. Gazzam,* 339 *U. S.* 532, 70 *S. Ct.* 784, 94 *L. Ed.* 1045 (1950); *Local Union No. 10, etc., A. F. of L. v. Graham,* 345 *U. S.* 192, 73 *S. Ct.* 585, 97 *L. Ed.* 946 (1953); *International Brotherhood of Teamsters, Local 695, A. F. L. v. Vogt, Inc.,* 354 *U. S.* 284, 77 *S. Ct.* 1166, 1 *L. Ed. 2d* 1347 (1957).

B.

The remaining question on this branch of the case is whether the Anti-Injunction Act, *N. J. S.* 2*A*:15–51, bars relief.

A number of states have adopted statutes more or less patterned upon the Norris-La Guardia Act, 29 *U. S. C. A.,* §§ 101–115. Their interpretation has been far from uniform. See *annotation* 29 *A. L. R. 2d* 323 (1953). We can see no profit in a review of decisions elsewhere. We note merely that the generality of such statutes fosters divergent interpretations and that notwithstanding this legislation peaceful picketing for an unlawful objective has been enjoined either on the thesis that there is no labor dispute if the objective is unlawful, or that the unlawful objective justifies the restraint even if a labor dispute be deemed to exist. See *Amalgamated Meat Cutters & Butcher Workmen of North America v. Green,* 119 *Colo.* 92, 200 *P. 2d* 924 *(Sup. Ct.* 1948); *Lavery's Main Street Grill, Inc. v. Hotel and Restaurant Employees-Bartenders Union Local 288,* 146 *Conn.* 93, 147 *A. 2d* 902 *(Sup. Ct. Err.* 1959); *Murrin v. Cook Bros. Dairy, Inc.,* 127 *Ind. App.* 23, 138 *N. E.*

2d 907 (*App. Ct.* 1956); *Bitzer Motor Co. v. Local 604, etc.,* 349 *Ill. App.* 283, 110 *N. E.* 2d 674 (*App. Ct.* 1953); *Pleasant Valley Packing Co. v. Talarico,* 5 *N. Y.* 2d 40, 177 *N. Y. S.* 2d 473, 152 *N. E.* 2d 505 (*Ct. App.* 1958); *Audubon Homes, Inc. v. Spokane Building and Construction Trades Council,* 49 *Wash.* 2d 145, 298 *P.* 2d 1112 (*Sup. Ct.* 1956), *certiorari* denied 354 *U. S.* 942, 77 *S. Ct.* 1392, 1 *L. Ed.* 2d 1536 (1957).

■■ The Anti-Injunction Act has two phases. Its major concern is with procedural fairness; indeed, the declaration of policy in *N. J. S.* 2*A* :15–52 speaks solely of that subject. The other phase of the statute deals with restrictions upon the injunctive relief which may be awarded after compliance with the adjective requirements. *N. J. S.* 2*A* :15–51. With respect to the procedural aspects, the statute applies not only to a case "involving" a labor dispute but as well to one "growing out of" a labor dispute. The statute should be sympathetically construed to attain the intended procedural safeguards. The fact that the lawfulness of the objective of picketing is in dispute should not justify a disregard of those provisions. See *Poirier v. Superior Court,* 150 *N. E.* 2d 558 (*Mass. Sup. Jud. Ct.* 1958). We have no doubt that here there was initially a labor dispute and that in its later phase the controversy remained at least one "growing out of" a labor dispute. The procedural aspects of the statute therefore applied, and we add, there is no suggestion that they were not fully honored. The sole issue is whether as a matter of substantive right plaintiffs were entitled, after the statutory hearing, to the injunctive relief granted.

This brings us to the meaning of *N. J. S.* 2*A* :15–51 which prohibits a restraint against specified acts including:

"e. Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, picketing, without fraud or violence, or by any other method not involving fraud or violence, and not in violation of any other law of the state of New Jersey;"

The statute has been construed to be merely declaratory of existing substantive law to be applied after the procedural requirements have been satisfied. *Westinghouse Electric Corp. v. United Electrical, etc.*, 139 *N. J. Eq.* 97 (*E. & A.* 1946); *Outdoor Sports Corp. v. A. F. of L., Local 23132,* 6 *N. J.* 217 (1951). See *Note,* 11 *Rutgers L. Rev.* 445 (1956). Local 680 questions that conclusion and points to subparagraph (k), said to be unique in anti-injunction statutes, which reads:

"k. The aforesaid acts are hereby declared, as a matter of public policy of the state of New Jersey, to be lawful and in no wise to constitute a tort or a nuisance."

We find no concrete direction in this language beyond the specific terms of the subparagraphs which precede it. Hence nothing in (k) can affect the scope of (e). If any alteration of substantive law was intended, it must be found in the latter provision itself.

There are two reasons why injunctive relief was here warranted.

The first is that the specific labor disputes here involved had ceased to exist before the relief was ordered. Subparagraph (e) protects publicity only as to "the existence of, or the facts involved in, any labor dispute." The controversy over the wrongful discharge of the men ended when they took the firm stand described above, and the controversy over recognition terminated in any event upon recognition of and the execution of a collectively bargained agreement with the Independent Union after its selection by the employees.

The second reason is that (e) does not bar a restraint against peaceful picketing for an unlawful purpose even if a "labor dispute" does exist. Local 680 contends this view may not rest upon the concluding phrase of (e) which reads "not in violation of any other law of the state of New Jersey." It argues that the phrase refers to "method" and hence in its application to "picketing" adds a limitation

only upon the mode in which picketing may be conducted. Thus Local 680 contends the phrase may not be construed to prohibit picketing which is free from fraud, violence or other illegality of manner, merely because of illegality of the *objective* of the picketing. The phrase in question does not appear in the Norris-La Guardia Act. Its precise office is not too clear, but in any event we think the controlling consideration is that the statute protects peaceful picketing only as a means for *"Giving publicity* to the existence of, or the facts involved in, any labor dispute." The point to be noted is that the Legislature did not declare that peaceful picketing shall be a legitimate economic weapon in any or all labor disputes. Rather, it barred injunctive interference only with the right of free speech and protected peaceful picketing only as a means to that end. Hence the statute presents essentially the same problem of the reconciliation between peaceful picketing and free speech with which the United States Supreme Court has dealt in the decisions cited above.

As pointed out in our earlier opinion, there was a brief interval in which it was thought by some that a perfect equation existed between peaceful picketing and free speech. It soon became clear that the law would acknowledge that more often than not the picket and his sign are more than and different from a mere exercise of the right to communicate to persuade. The question then became, when may peaceful picketing be brought to bear as a coercive economic weapon in labor disputes? The statute does not supply the answer. We cannot assume the Legislature intended to legalize peaceful picketing as a coercive economic weapon when the language it employed goes no further than to protect picketing as a mode of publicizing a cause. It thus remains for the judiciary, in the absence of more definitive legislation, to determine when peaceful picketing may be employed for something more or other than communication, *i. e.,* as a full economic weapon with its intended coercive impact, *cf. Galler v. Slurzberg,* 31 *N. J. Super.* 314,

325 (*App. Div.* 1954), affirmed 18 *N. J.* 466 (1955), and when it must yield to the right of others to be protected from coercion. Hence the statute does not control the issue before us.

## III.

 Local 680 challenges so much of the judgment as enjoins it from "using any of the media of disseminating information to the public which would indicate * * * that a labor dispute exists" or would indicate that the employees of Decker are on strike or are locked out or would interfere with the employees' right to bargain collectively through representatives of their own choosing.

The record does not reveal that Local 680 questioned before the trial court the breadth of the form of judgment as presented by the prevailing parties or suggested clarification or qualification. That course should have been followed. We will nonetheless consider the objection in its precise terms:

"As part of the activity of Local 680, a circular letter was published and distributed (EX P-15, D-234a). The injunction prohibits us from distributing this letter (which is perfectly truthful since the trial court's findings of fact verify it) and from using any medium, *even word of mouth*, to inform *anyone* of our dispute with plaintiffs or Decker's."

The sense of the restraint is to prohibit publicity which is false in the light of the trial court's findings. The circular letter, thus tested, was accurate in its claim of wrongful discharge for union activity, but was false insofar as it charged that Decker formed the Independent Union and required its employees to join it and that the discharged employees sought reinstatement. The restraint against repetition of untruthful publicity does not offend the right of free speech under either the Fourteenth Amendment or the Anti-Injunction Act. Nothing in the judgment, as we read it, would prevent Local 680 from publicizing the matter to

employees of Decker and to others through normal media other than picketing, provided that its account is complete and truthful in the light of the adjudged facts and is free of threats designed to compel the abrogation of the collective bargaining contract or the recognition of Local 680 during the contract period.

The judgment is accordingly affirmed. No costs.

BURLING, J. (concurring). I agree with the views expressed by the majority, but would additionally rely upon the constitutional grounds originally enunciated by this court upon the appeal from the denial of *pendente lite* injunctive relief, 23 *N. J.* 85 (1956). The specter of a company-dominated union raised by Local 680 has disintegrated by the defaulting silence of Local 680 when called upon by the trial court to come forward with proofs upon the tendered issue. The plenary hearing has confirmed that the main objective of the picketing was to bring economic pressure to bear upon Decker with the intent of compelling the members of the Independent Union to join Local 680 against their free will, *i. e.*, to relieve the economic pressure against their employer and thereby conserve their employment. The dominant issue raised on this appeal is identical to that disposed of on the previous appeal.

I vote to affirm the judgment from which the appeal is taken.

BURLING, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and HALL—6.

*For reversal*—None.