62 N.J. Super. 213 (1960)
162 A.2d 590
WILLIAM A. NIX (AND 32 OTHERS), PLAINTIFFS-APPELLANTS,
v.
SPECTOR FREIGHT SYSTEM, INC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 1960.
Decided June 28, 1960.
*214 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. John J. Bracken argued the cause for appellants, together with Mr. Alfred W. Blumrosen, of the Michigan Bar, admitted pro hac vice (Messrs. Bracken & Walsh, attorneys).
*215 Mr. Herbert Burstein, of the New York Bar, admitted pro hac vice, argued the cause for respondent Spector Freight System, Inc. (Messrs. Davidson & Miniutti, attorneys).
Mr. Thomas L. Parsonnet argued the cause for respondent Local 478, International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America (Messrs. Parsonnet, Weitzman and Oransky, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs appeal from a Law Division judgment dismissing the amended complaint and discharging the order to show cause in their action to set aside an arbitration award and to have the issues submitted to arbitration pursuant to the provisions of the collective bargaining agreement under which they claim employment seniority. The opinion filed by the trial judge shows he relied solely upon plaintiffs' failure to take action with respect to the award within three months after it was delivered, as required by section 8 of the Arbitration Act, L. 1923, c. 134; N.J.S. 2A:24-7.
In February 1956 defendant Spector Freight System, Inc. (Spector) and Mid-States Freight Lines, Inc. (Mid-States) jointly requested authority from the Interstate Commerce Commission under section 5 of the Interstate Commerce Act for (a) acquisition by Spector of control of Mid-States through the purchase of its capital stock; (b) the concurrent merger of the operating rights and property of Mid-States into Spector for ownership, management and operation; and (c) acquisition by Spector's controlling interests of concurrent control of the operating rights and properties of Mid-States. The Commission subsequently gave its approval and the transaction took effect as of April 1, 1957. Mid-States was dissolved and its assets and goodwill transferred to Spector, which has continued to operate the properties of both companies and has adopted the trade name "Spector-Mid-States."
*216 Spector had maintained a terminal in Union, N.J., and Mid-States one in Newark. Following Spector's acquisition of Mid-States it closed its Union terminal and transferred operations to Newark. It has retained all the employees who formerly worked at the two terminals. The employees of both Spector and Mid-States were members in good standing of defendant Local 478, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Union of America (Union) at the time of Spector's acquisition of Mid-States. They enjoyed seniority privileges in their respective companies in accordance with the terms of identical contracts between the companies and the Union. These contracts, effective September 1, 1956, were to continue in full force and effect until midnight, August 31, 1958. (There is presently a new two-year collective bargaining agreement between Spector-Mid-States and the Union, which went into effect September 1, 1958.)
Section 5 of the 1956-58 contract provided that seniority according to job classification should prevail at all times; the employer was to compile a seniority list, subject to Union approval; and employees were to be ranked in seniority according to their length of service in the work classification to which they were assigned. Section 22 declared that the contract was to be binding upon the successors and assigns of the parties. Unlike the new 1958-60 contract, there were no provisions governing seniority rights in case of company merger or where one company acquired or purchased control of the business of another. Section 17 provided that should any dispute arise between the employer and the employees, or the employer and the Union, concerning the application or interpretation of any provisions of the collective bargaining agreement, or concerning any term or condition of employment, or otherwise, the parties were to attempt to adjust the controversy amicably between themselves and, if unable to do so, to submit to arbitration.
Immediately after Spector's acquisition of Mid-States a dispute arose as to whether Spector's employees had seniority *217 as a class over those who had worked for Mid-States. The Union itself followed an uncertain course. During the first week of the new arrangement it decided that separate seniority lists should be kept for each set of employees, the Spector lists to take precedence over Mid-States'. Thereafter, it took the position that the seniority lists should be dovetailed into a single list for each employment category, the first name on the corresponding Spector and Mid-States lists to become first and second, respectively, on a combined list; the second names on the two lists to become third and fourth on the combined list, etc. Finally, the Union's executive committee ruled that the seniority lists should again be separated and the old Spector lists entitled to priority over those pertaining to the old Mid-States employees. Spector contended that this method for determining seniority was inequitable because its acquisition of Mid-States was in fact a merger, and therefore the seniority lists of Mid-States' employees ought to be merged with those of Spector's employees. The Union, on the other hand, viewed the transaction between Spector and Mid-States as a purchase rather than a merger, so that when Spector added Mid-States' employees to its payroll, they became new employees of Spector and accordingly had to accept a seniority status below that of the old Spector employees.
The dispute was submitted to arbitration. The arbitrator held that when Spector acquired Mid-States and the latter dissolved as a corporation, there was an end to the employment relationship between Mid-States and its employees. Seniority with Mid-States ceased to exist. There was no provision in the Union contract for transfer or merger of seniority rights in the event of consolidation, so that the former Mid-States employees, having entered a new employment relationship, obviously could not claim seniority rights on the basis of service with Spector. Nor could they under the contract claim the right to transfer seniority from Mid-States. Further, their seniority rights were not protected under the Interstate Commerce Commission order. *218 Accordingly, the arbitrator held the conclusion inescapable that there was no basis for integrating the seniority lists under the existing contract. He thereupon entered an award, dated July 26, 1957, holding that the Union's determination on the question of the seniority of Spector's employees in its Newark terminal following the combining of operations of Mid-States and Spector was proper.
On September 16, 1957, 52 days after the arbitrator's award, plaintiffs, who are 33 of the former Mid-States employees, instituted suit against Spector in the United States District Court for New Jersey charging that Spector had failed and refused to compile a seniority list (as required by section 5 of the Union contract) designating them as senior to the former Spector employees, but permitted the Union to compile a list which gave the former Spector employees a higher seniority. The complaint further alleged that plaintiffs' attorney had demanded restoration of their seniority on pain of suit, but that thereafter Spector and the Union, "desiring to circumvent the legal and contractual rights of plaintiffs, and secretly agreeing to do so, conspired to present the matter to an alleged arbitration." Plaintiffs complained they had not been represented at the arbitration. They prayed that the award be set aside as illegal, the seniority provisions of the Union contracts specifically performed, and plaintiffs made whole for losses suffered through deprivation of seniority since April 1, 1957. Spector thereupon moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) because of failure to state a claim upon which relief could be granted, failure to name the former Spector employees and the Union as indispensable parties, and lack of jurisdiction of the court over the subject matter of the action. The court held that the Union was an indispensable party defendant and dismissed the complaint, granting plaintiffs leave to join the Union as representative of the Spector employees. Nix v. Spector Freight System, Inc., 157 F. Supp. 10 (D.N.J. 1957). The Court of Appeals for the Third Circuit affirmed "for failure *219 to join the Union or its members who were the beneficiaries of the arbitration award." Nix v. Spector Freight System, Inc., 264 F.2d 875 (1959).
The present Law Division action was instituted on April 30, 1959 by complaint and order to show cause, naming Spector and the Union as defendants. The complaint made essentially the same charges as in the federal action. Plaintiffs demanded judgment setting the arbitration award aside, specifically enforcing the contract, and making plaintiffs whole for their losses during the period of breach. The trial court granted defendants' motion to dismiss the complaint and discharged the order to show cause for the reason that they failed to join the Spector employees as indispensable parties defendant, failed to plead facts upon which a cause of action could be based, and further failed to comply with R.R. 4:85-2 and 4:44-4 (requiring that in actions on order to show cause the complaint be verified by an affidavit made on personal knowledge and setting forth only facts which are admissible in evidence and to which the affiant is competent to testify). Plaintiffs were permitted to amend the complaint within ten days. They did so.
The amended complaint again named Spector and the Union as parties defendant, but did not join the Spector employees. The pleading amplified some of the allegations of the original complaint in certain respects not here pertinent, except that the arbitration award was attacked as illegal not only because of the ignorance or duplicity, or both, mentioned in the initial pleading, but because the award was procured "by fraud and undue means"; the arbitrator was "guilty of misbehavior" prejudicial to plaintiffs' rights, in that he decided the matter knowing they were not represented at the hearing, "the Union having allied itself altogether with the Spector Employees"; and the arbitrator exceeded his powers by dictating new contract terms rather than interpreting the existing ones. The amended complaint also recited the proceedings in the federal courts. The relief sought was limited to the setting aside *220 of the arbitration award and, after its vacation, submitting the issues to binding arbitration under the terms of the collective bargaining agreement, all affected individuals and groups to be permitted to intervene as parties on such terms as the court might designate. The complaint was verified by the affidavit of one of the plaintiffs, who stated that the facts alleged "that are within my personal knowledge are true; those of which I do not have immediate personal knowledge I believe to be true."
Spector moved to dismiss the amended complaint because (1) it was barred by the three-month limitation of N.J.S. 2A:24-7; (2) plaintiffs had failed to join the Spector employees as indispensable parties defendant; (3) res judicata under the federal judgments mentioned above; (4) failure to follow out the Law Division judgment of dismissal which required the Spector employees to be made defendants; (5) failure of the complaint to state facts sufficient to constitute a cause of action in fraud or conspiracy or to vacate an arbitration award; (6) failure to cure the defects of the original complaint; (7) lack of jurisdiction over the subject matter, since plaintiffs' remedies were restricted to those prescribed in the collective bargaining agreement and because they had failed to exhaust their remedies under that contract; and (8) failure to comply with R.R. 4:85-2 and 4:44-4. After filing a written opinion holding that the present action to vacate the arbitration award was instituted long after the prescribed limitation set out in N.J.S. 2A:24-7, and that the federal action had not stayed the running of the statutory limitation or barred it as a defense, the court granted the motion and entered the judgment here under appeal.
The above fairly complete exposition demonstrates the tacking and veering of plaintiffs in their progress through the federal and New Jersey courts. In their reply brief they sum up their situation as follows: arbitration being a creature of contract, it binds only the parties to the contract. Plaintiffs were not parties, so that ordinarily they could *221 not contest the arbitration as long as the matter was lawfully committed to the arbitrator. However, they claim the right to attack the jurisdiction of the arbitrator, and since jurisdiction may always be questioned, such an attack may be launched beyond the three-month period. Jurisdiction, they claim, was lacking because plaintiffs were unrepresented before the arbitrator. The arbitration is therefore necessarily void and plaintiffs have a right of action substantially identical with that in O'Brien v. Dade Bros., 18 N.J. 457 (1955). However, the form of relief secured in Dade no longer being available under the subsequent decision of our Supreme Court in Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541 (1958), they are compelled to pursue their contract rights. Since these had been refused by the Union after plaintiffs appealed to its executive board and to the joint council (the Union's appellate tribunal), or had been carried out illegally, enforcement of seniority rights by way of court-supervised arbitration is properly sought.
Defendants again claim that plaintiffs' contentions are without merit because (1) the amended complaint is barred by the limitation in N.J.S. 2A:24-7; (2) it was fatally defective because of the nonjoinder of indispensable parties, namely, the Spector employees; (3) it should have been dismissed because plaintiffs failed to abide by R.R. 4:85-2 and 4:44-4; (4) it should have been dismissed in any event, because plaintiffs are barred from maintaining this action by the doctrine of res judicata  the reference being to the federal court holdings and judgments; (5) the contract under which plaintiffs' claim is asserted expired August 31, 1958; they have no present right of action because seniority is now controlled by the new 1958-60 contract; (6) the amended complaint should have been dismissed in any event because plaintiffs were restricted to their contract remedy; and (7) the amended complaint fails to set forth facts justifying a vacation of the award under any of the grounds set out in N.J.S. 2A:24-8.
*222 We need not consider the arguments made by defendants in support of the Law Division judgment except for the one relating to the three-month limitation. Plaintiffs readily admit that if their action were one for vacating an award under the Arbitration Act, N.J.S. 2A:24-1 et seq., a dismissal of the amended complaint was justified, since they had no standing to seek aid under the statute. But, they argue, their suit is actually one against the employer and the union for illegal destruction of job rights resulting in damages, and such a wrong is recognized as actionable, citing the O'Brien and Jorgensen cases, above, and Independent Dairy Workers Union, etc. v. Milk Drivers, etc., Local No. 680, 30 N.J. 173 (1959). This being the case, the only periods of limitation applicable are two and six years (N.J.S. 2A:14-1 and 2).
The Arbitration Act is explicit and entirely clear. N.J.S. 2A:24-7 provides that
"A party to the arbitration may, within 3 months after the award is delivered to him, unless the parties shall extend the time in writing, commence a summary action in the court aforesaid [Superior Court or the County Court of the county where either party resides, N.J.S. 2A:24-3] for the confirmation of the award or for its vacation, modification or correction. Such confirmation shall be granted unless the award is vacated, modified or corrected."
Plaintiffs' action plainly invokes the aid of this statute, for they commenced it, not by summons and complaint, but in a summary manner, by complaint, affidavit and order to show cause. The latter proceeding is the only one authorized by the act, and so must comply with its requirements.
We find plaintiffs' contention that their suit is one for damages arising from the illegal destruction of their job rights entirely unpersuasive. Not only have they resorted to summary action, but the verification affidavit recites that it is made "to substantiate the allegations of the attached amended complaint for relief under N.J.S.A. 2A:24-1 et seq." The amended complaint nowhere asks for damages. The first count requests judgment declaring the arbitration *223 award void or, in the alternative, setting aside and vacating the alleged award as illegal and void. The second count demands judgment requiring defendants, or either of them, "to submit or resubmit the issues remaining in this matter, after a vacation of the said arbitration award, to binding arbitration under the terms of the said contract * * *." If this were not enough, plaintiffs at the oral argument conceded they were not demanding damages here.
Since plaintiffs have brought a summary action under the Arbitration Act, they are inevitably bound by its three-month limitation period. N.J.S. 2A:24-7. The O'Brien, Jorgensen and Independent Dairy Workers cases, and N.J.S. 2A:14-1 and 2, have no pertinence in such a setting.
Plaintiffs claim that assuming the three-month limitation is applicable, they have never let 90 days go by since the award without pursuing their rights. They point to the federal court action as tolling the time available to them for resorting to our courts under the Arbitration Act. We cannot agree. The general rule is that in order that the pendency of other proceedings shall have the effect of tolling the statute of limitations on a cause of action, the proceedings must be such as to prevent enforcement of the remedy by action. Here plaintiffs voluntarily elected to pursue their remedy by action in the federal courts, instead of resorting to the state court. In such a case the limitations period runs against their claim in our court. 54 C.J.S., Limitations of Actions, § 247, pp. 279-280 (1948).
If we adopt plaintiffs' argument that they were not parties to the collective bargaining agreement (it would appear that they certainly were third-party beneficiaries) or directly or indirectly represented in the arbitration proceedings and thus not bound by the award, they could have ignored any adverse arbitration determination and, if necessary, taken proper judicial proceedings outside the Arbitration Act to protect themselves against the effectuation of any such award.
Plaintiffs were in a position while the arbitration was going on, or within a reasonably short time thereafter, where *224 it was incumbent upon them to make a determination as to whether they should consider themselves represented in those proceedings or bound by any award made. Their initial determination, apparently, was not to consider themselves represented or bound. They instituted proceedings in the federal courts, and after two years of futile litigation, found themselves ultimately unsuccessful. They then returned to the courts of New Jersey by instituting the present action, which clearly had for its purpose the invocation of our Arbitration Act proceeding to vacate the award by reason of alleged illegality and errors. They cannot attempt to avail themselves of our Arbitration Act and yet ask to be relieved of the limitations provision which is part and parcel of it.
It is not for us to suggest the remedy plaintiffs could have pursued, or the one they may presently pursue. We have only to decide whether the dismissal of their amended complaint was correct. We hold that it clearly was.
Affirmed.